REA H. KEECH,JR. AND MARY L. KEECH, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Keech v. Commissioner
Docket No. 4641-90
United States Tax Court
T.C. Memo 1993-71; 1993 Tax Ct. Memo LEXIS 69; 65 T.C.M. (CCH) 1986; March 3, 1993, Filed *69 Decision will be entered under Rule 155. For petitioners: W. Michel Pierson. For respondent: Sandra N. Jefferson. WRIGHT
WRIGHT
MEMORANDUM FINDINGS OF FACT AND OPINION WRIGHT, Judge: Respondent determined a deficiency in petitioners' 1983 Federal income tax of $ 60,697 and an addition to tax under section 6661 [1] of $ 15,174. Petitioners Rea H. Keech, Jr., and Mary L. Keech concede that Rea H. Keech, Jr. (hereinafter petitioner), received a constructive dividend in the amount of $ 6,170 from Rea Keech Buick, Inc. (hereinafter Keech Buick). Accordingly, a Rule 155 computation will be necessary in this case. The issues for decision are: (1) Whether section 6501(a) precludes respondent from assessing an income tax deficiency against petitioners for taxable year 1983, which is due in part to the disallowance of a subchapter S corporation net *70 operating loss carried forward from taxable year 1981. We hold that respondent is not precluded from assessing an income tax deficiency for taxable year 1983 against petitioners. (2) Whether petitioner, the sole shareholder of Keech Buick, a subchapter S corporation, improperly increased his adjusted basis in the corporation for the purpose of claiming pass-through losses in connection with a transaction where he executed a promissory note as comaker/guarantor. We hold that petitioner improperly increased his adjusted basis in the corporation, and therefore petitioners are not entitled to the claimed net operating loss carryover deduction. (3) Whether petitioners are liable for the substantial understatement addition to tax set forth in section 6661. We hold that petitioners are not liable. FINDINGS OF FACT Some of the facts have been stipulated and are found accordingly. The stipulation of facts and attached exhibits are incorporated herein. Petitioners resided in Baltimore, Maryland, at the time their petition was filed in this case. Petitioner purchased Keech Buick from his father's estate in 1967, and incorporated the automobile dealership on October 3, 1967, in the State *71 of Maryland. Petitioner paid a purchase price of $ 75,000 for 750 shares of Keech Buick. From 1967 through 1983, petitioner was the sole shareholder of Keech Buick. The business of Keech Buick consisted of the retail sale and service of automobiles. On January 1, 1980, Keech Buick made a valid election to be taxed as a subchapter S corporation. Keech Buick remained a subchapter S corporation until it revoked its subchapter S election on April 30, 1984. On January 21, 1981, Keech Buick, and petitioners as guarantors, executed an agreement to purchase an automobile dealership facility, including the land, building, equipment, and improvements owned by American Motors Realty Corp. (hereinafter American Motors) located on Route 40 in Ellicott City, Maryland (hereinafter the Route 40 property), for $ 950,000. Pursuant to paragraph 3(a) of the purchase agreement, Keech Buick paid $ 50,000 cash as a downpayment and provided American Motors with a promissory note for the balance of $ 900,000. Paragraph 3(b) of the purchase agreement provided that the promissory note was to be secured by a deed of trust encumbering the land and improvements conveyed by American Motors to Keech Buick. *72 Paragraph 3(b) of the purchase agreement required that both petitioners and the corporation execute the promissory note as comakers. The Route 40 property purchased from American Motors had been vacant for at least 6 months prior to the sale. The Route 40 property is located in a growing area where land values are steadily rising. The present Maryland State assessed value for the Route 40 property is in excess of $ 1 million. A promissory note dated March 3, 1981, was given by Keech Buick to American Motors. The promissory note was secured by a deed of trust on the Route 40 property. Petitioners signed the promissory note as comakers, although petitioner Mary L. Keech was not a shareholder, officer, or employee of the corporation. Keech Buick obtained title to the Route 40 property by a deed dated March 3, 1981, from American Motors. On the same date, Keech Buick executed a deed of trust for the Route 40 property which was provided to American Motors. American Motors requested petitioners to personally sign the promissory note because American Motors' corporate policy required that they obtain as much financial protection as possible. In accordance with the purchase agreement, *73 Keech Buick obtained title to the Route 40 property and made all payments of principal and interest on the promissory note. Petitioners did not make any payments of principal or interest on the promissory note, and all interest deductions relating to the promissory note were claimed by Keech Buick on the corporate information return, Form 1120S. Petitioners claimed no interest expense deduction on their income tax return (Form 1040) in connection with the loan from American Motors. The principal amount of the loan from American Motors was not reflected on the corporate books and records or the corporate income tax returns as an increase in capital or as a loan from petitioner. For taxable years 1978 through 1984, Keech Buick reported losses on the corporate tax returns. The losses reported on corporate Form 1120 for the years 1978 and 1979, and on Form 1120S for the years 1980 through April 30, 1984, are as follows: Year
Taxable Income (Loss)
12/31/78
( $ 26,699)
12/31/79
(  76,732)
12/31/80
(  17,979)
12/31/81
( 297,138)
12/31/82
( 236,944)
12/31/83
(   1,380)
04/30/84
(  31,650)
Keech Buick's original Form 1120S information return for taxable year *74 1981 was filed on June 21, 1984. The corporation's amended Form 1120S for taxable year 1981 was filed on July 11, 1984. Keech Buick's original Form 1120S information return for taxable year 1982 was filed on June 21, 1984. The corporation's original Form 1120S for taxable year 1983 was filed on July 11, 1984. On July 11, 1984, petitioners filed amended U.S. individual income tax returns for 1981 and 1982. The amended returns resulted in the following adjustments of the net operating losses claimed by petitioners on their original 1981 and 1982 individual income tax returns: Original
Amended
1981 NOL
$ 155,603
$ 212,851
1982 NOL
124,422
193,346
The 1981 net operating loss was applied by petitioners as follows: Carryback to 1980
$ 43,637
Carryback to 1979
35,888
Carryback to 1978
29,356
Carryforward to 1982
103,970
212,851
The unused net operating loss from 1981 of $ 103,970, and the net operating loss for 1982, $ 193,346, were carried over to petitioners' 1983 joint individual income tax return. This resulted in a net operating loss deduction of $ 297,316 ($ 103,970 + $ 193,346) for taxable year 1983. In taxable year 1983, the corporation sold *75 a commercial tract of land in Ellicott City, and petitioners reported a net long-term capital gain of $ 463,221. In the notice of deficiency, respondent disallowed the 1983 net operating loss carryover of $ 297,316. The reasons set forth in the notice of deficiency are as follows: (1) The NOL arises from losses passed through to you in 1981 and 1982 as the sole shareholder of an S-Corporation, Rea Keech Buick, Inc. (2) Pursuant to section 1374(c) of the Internal Revenue Code in effect for the years 1981 and 1982, these losses are not allowable because your basis in the S-corporation at the end of 1981 and at the end of 1982 was a negative amount. Further, no carryover is allowed to subsequent years. (3) Your guarantee of a $ 900,000 promissory note executed by the corporation in March 1981, payable to American Motors, for purchase of a business facility at 8431 Baltimore National Pike did not increase your basis in the corporation because the debt was the obligation of the corporation, the corporation made all payments of principal and interest, the loan was secured by a Deed of Trust on the business property, and you have not shown that your guarantee of the loan was a determining *76 factor in the transaction.
Respondent's and petitioners' calculations of petitioner's basis in the stock of Keech Buick as of December 31, 1981, January 1, 1982, December 31, 1982, and January 1, 1983, are as follows: Petitioners'
Respondent's
Purchase of stock
$ 75,000 $ 75,000    Net loss for 1980
(17,979)
(17,979)   Yearend adj. basis
57,021 57,021    Addl. paid-in-capital
88,126 88,126    Personal guarantee
900,000 -0-     Repayments of note
( 2,807)
-0-     Loss for 1981
(297,138)
(193,168)  Basis 1/1/82
745,202 ( 48,021)  Addl. guaranteed note
32,399 -0-     Net loss for 1982
(236,944)
-0-     Basis 1/1/83
540,657 ( 48,021)   Addl. guaranteed note
27,086 -0-     Capital gain
463,221 463,221    Net profit (loss)
for 1983
( 1,380)
4,790    Distribution to S/H
-0-   ( 16,017.18)
Basis 12/31/83
1,029,584 403,972.82 On September 24, 1985, petitioner, as president and sole shareholder of Keech Buick executed a power of attorney (Form 2848) authorizing Robert L. Cardoni, petitioners' accountant, to represent Keech Buick before the Internal Revenue Service concerning the 1983 corporate information return. *77 In December 1986, Cardoni and representatives of respondent executed a consent to extend the time to assess tax attributable to items of an S corporation, Form 872-S, extending the limitations period for assessment for taxable year 1983 to October 15, 1987. In July 1987, Cardoni and representatives of respondent executed a special consent to extend the time to assess tax attributable to items of an S corporation, Form 872-R, indefinitely extending the limitations period for 1983, subject to termination, as specified in Form 872-R, by either party. Cardoni and respondent did not execute a consent to extend the time to assess tax attributable to items of an S corporation for taxable years 1980, 1981, and 1982. Petitioners filed their 1983 individual Federal income tax return on July 19, 1984. In December 1986, petitioners and respondent executed a consent to extend the time to assess tax, Form 872, for their 1983 individual Federal income tax return extending the time for assessment until October 15, 1987. In June 1987, petitioners and respondent executed a special consent to extend the time to assess tax, Form 872-A, indefinitely extending the limitations period for taxable year *78 1983 subject to termination by notice of either party. On December 13, 1989, respondent issued a notice of deficiency to petitioners for taxable year 1983. OPINION Issue 1. Section 6501 Statute of Limitations
Section 6501(a) provides the general rule that the amount of any tax imposed by the Internal Revenue Code shall be assessed within 3 years after the return was filed, and no proceeding in court without assessment for the collection of such tax shall be begun after the expiration of that period. Section 6501 also provides numerous, nonexclusive exceptions to the general 3-year limitations rule which extend, sometimes indefinitely, the period within which respondent may assess a tax. One such exception is contained in section 6501(c)(4), which provides that assessment periods may be extended by agreement. Section 6501(c)(4) contains the following: (4) EXTENSION BY AGREEMENT.--Where, before the expiration of the time prescribed in this section for the assessment of any tax imposed by this title, * * * both the Secretary and the taxpayer have consented in writing to its assessment after such time, the tax may be assessed at any time prior to the expiration of the *79 period agreed upon. The period so agreed upon may be extended by subsequent agreements in writing made before the expiration of the period previously agreed upon.
The Supreme Court recently determined that the limitations period for assessing the income tax liability of an S corporation shareholder runs from the date on which the shareholder's return is filed. Bufferd v. Commissioner,     U.S.    , 113 S. Ct. 927 (1993). The Supreme Court's opinion settled a conflict between the Ninth Circuit Court of Appeals and the Courts of Appeals for the Second, Fifth, and Eleventh Circuits regarding whether the limitations period began running from the date on which the shareholder's return or the corporation's return was filed. See Green v. Commissioner, 963 F.2d 783 (5th Cir. 1992); Fehlhaber v. Commissioner, 954 F.2d 653 (11th Cir. 1992), affg. 94 T.C. 863 (1990); Bufferd v. Commissioner, 952 F.2d 675 (2d Cir. 1992); Kelley v. Commissioner, 877 F.2d 756 (9th Cir. 1989). In the instant case, petitioners *80 filed their 1983 Federal individual income tax return on July 19, 1984. In December 1986, petitioners and respondent executed a consent to extend the time to assess tax, Form 872, for their 1983 tax return extending the time for assessment until October 15, 1987. In June 1987, petitioners executed another consent form in which they indefinitely extended the limitations period for taxable year 1983. Accordingly, respondent is not precluded pursuant to section 6501(a) from assessing an income tax deficiency against petitioners for taxable year 1983. Further, respondent is not precluded pursuant to section 6501(a) from assessing this 1983 deficiency which is due in part to the disallowance of a subchapter S corporation net operating loss carried forward from taxable years 1981 and 1982. Respondent is permitted to recalculate a net operating loss carryover from a barred year for the purpose of correctly determining the tax liability for an open year. Hill v. Commissioner, 95 T.C. 437 (1990); Calumet Industries, Inc. v. Commissioner, 95 T.C. 257 (1990). Accordingly, respondent is not barred in the instant case from examining *81 items in petitioners' 1981 and 1982 taxable years to determine whether petitioner had a sufficient adjusted basis in his Keech Buick stock which warranted claiming net operating loss carryforwards on petitioners' 1983 individual Federal income tax return. Issue 2. Adjusted Basis in Keech Buick
The next issue for consideration is whether petitioner had a sufficient adjusted basis in Keech Buick to absorb the S corporation's 1981 and 1982 losses, thereby entitling petitioners to claim a net operating loss carryover deduction on their 1983 individual Federal income tax return. In order to decide this issue, we must determine whether petitioner is entitled to an increase in his adjusted basis in the corporation based upon his status as a comaker on a promissory note. Section 1374(c)(2), now codified as section 1366(d)(1), permits an S corporation shareholder to deduct a proportionate share of the corporation's net operating loss to the extent that the loss does not exceed the sum of the adjusted basis of the shareholder's stock in the corporation and any indebtedness of the S corporation to the shareholder. In 1982, Congress revised the rules concerning subchapter S corporations *82 in the Subchapter S Revision Act of 1982, Pub. L. 97-354, 96 Stat. 1669. The revisions are applicable to taxable years beginning after December 31, 1982. Id. sec. 6(a), 96 Stat. 1697. The limitations provided in former section 1374(c)(2) were subsequently reenacted in section 1366(d)(1), which is currently in effect. Since the 1983 income tax deficiency against petitioners results from the disallowance of carryover loss deductions attributable to the 1981 and 1982 years of the S corporation, the provisions of section 1374(c)(2) are applicable in the instant case. For the taxable year 1982 and prior years, section 1.1374-1(b)(4)(i), Income Tax Regs., limited net operating loss deductions to the extent of the shareholder's basis as of the close of the corporation's taxable year. The precise question before us is whether petitioners' signing as comakers of the promissory note payable to American Motors in the amount of $ 900,000 is considered an economic outlay by petitioners. To decide this question, we must determine whether the transaction involving the $ 900,000 promissory note was a loan from American Motors directly to Keech Buick or was instead a loan to petitioners *83 who then gave it to Keech Buick as either a shareholder loan or a capital contribution. To increase a shareholder's basis in a subchapter S corporation, there must be an economic outlay on the part of the shareholder. Estate of Leavitt v. Commissioner, 875 F.2d 420, 422 (4th Cir. 1989), affg. 90 T.C. 206 (1988); Blum v. Commissioner, 59 T.C. 436, 440 (1972). In Estate of Leavitt v. Commissioner, supra at 421, five shareholder-guarantors signed guarantee agreements whereby each agreed to be jointly and separately liable for all indebtedness of the corporation to the lender. At the time of the loan, the S corporation's liability exceeded its assets, it could not meet its cash flow requirements, and it had virtually no assets to use as collateral. The S corporation's financial statements and information returns indicated that the loan was a loan from the shareholder-guarantors and not directly from the lender to the S corporation. Despite the representation to that effect, the S corporation made all of the loan payments, principal and interest, to the lender. *84 The shareholder-guarantors made no such payments. In Estate of Leavitt, neither the S corporation nor the shareholder-guarantors treated the corporate payments on the loan as constructive income taxable to the shareholder-guarantors. The Fourth Circuit Court of Appeals concluded that when there is no economic outlay, the fact that a shareholder is a guarantor or a comaker does not warrant the conclusion that the indebtedness should increase the shareholder's adjusted basis. Id. at 422-423. Decisions in other circuits are aligned with Estate of Leavitt, including Uri v. Commissioner949 F.2d 371 (10th Cir. 1991); Harris v. United States, 902 F.2d 439 (5th Cir. 1990); and Brown v. Commissioner, 706 F.2d 755 (6th Cir. 1983), affg. T.C. Memo. 1981-608. This Court has reached a similar result in several cases. See Calcutt v. Commissioner, 91 T.C. 14 (1988); Calcutt v. Commissioner, 84 T.C. 716, 720 (1985); Blum v. Commissioner, supra; *85 Raynor v. Commissioner, 50 T.C. 762 (1968). In Raynor v. Commissioner, supra at 770-771, this Court stated that: the fact that shareholders may be primarily liable on indebtedness of a corporation to a third party does not mean that this indebtedness is "indebtedness of the corporation to the shareholder" within the meaning of section 1374(c)(2)(B). No form of indirect borrowing, be it guaranty, surety, accommodation, comaking or otherwise, gives rise to indebtedness from the corporation to the shareholders until and unless the shareholders pay part or all of the obligation. * * *
See also Putnam v. Commissioner, 352 U.S. 82 (1956); Underwood v. Commissioner, 535 F.2d 309 (5th Cir. 1976), affg. 63 T.C. 468 (1975); Perry v. Commissioner, 47 T.C. 159 (1966), affd. 392 F.2d 458 (8th Cir. 1968); Wheat v. United States, 353 F. Supp. 720 (S.D. Tex. 1973); Neal v. United States, 313 F. Supp. 393 (C.D. Cal. 1970). *86 Petitioners rely chiefly upon the Eleventh Circuit case of Selfe v. United States, 778 F.2d 769 (11th Cir. 1985). In Selfe the Eleventh Circuit Court of Appeals applied a debt-equity analysis and held that a shareholder guarantee of a loan made to a subchapter S corporation may be treated for tax purposes as an equity investment in the corporation where the lender looks to the shareholder as the primary obligor. In Estate of Leavitt v. Commissioner, 90 T.C. 206, 216 (1988), affd. 875 F.2d 420 (4th Cir. 1989), we respectfully disagreed with the Eleventh Circuit and held that a shareholder's guarantee of a loan to a subchapter S corporation may not be treated as an equity investment in the corporation absent an economic outlay by the shareholder. In Calcutt v. Commissioner, supra at 24, this Court noted that: the rule suggested in Selfe is contrary to at least five of our decisions, three of which have been affirmed by the Sixth, Fifth, and Eighth Circuit Courts of Appeal. Moreover, the court in Selfe recognized the substantial body of contrary *87 law when it remarked that "arguments similar to Selfe's -- that the taxpayer's guarantee is in reality a loan to the shareholder/taxpayer that is subsequently advanced to the corporation -- usually meet with little success because the taxpayer is unable to demonstrate that the substance of his transaction is different than its form". Selfe v. United States, 778 F.2d at 774.
In the instant case, the S corporation purchased the Route 40 property by making a $ 50,000 cash downpayment and providing American Motors with a promissory note of $ 900,000. The S corporation obtained title to the Route 40 property. The promissory note was secured by a deed of trust on the Route 40 property. When petitioners signed as comakers on the promissory note, they were not required to give American Motors any financial statement and no liens were placed against any of their real or personal property. The S corporation made all payments of principal and interest on the promissory note. Petitioners did not make any payments of principal or interest on the promissory note and all interest deductions relating to the promissory note were claimed by the S corporation *88 on the corporate information return, Form 1120S. The principal amount of the promissory note was not reflected on the corporate books and records or the corporate information returns as a loan or capital contribution from a shareholder. Moreover, petitioner did not treat the corporate payments on the loan as constructive income taxable to him as a shareholder. In this case, petitioners never made an economic outlay on the promissory note. American Motors expected the corporation to make the payments on the note, and in fact the corporation did make all payments of principal and interest on the note, and was never in default. American Motors requested petitioners to sign the promissory note as comakers due to a corporate policy of American Motors to obtain as much security as possible. We find that the facts in the instant case are less supportive of petitioners' position than were the facts of Estate of Leavitt v. Commissioner, supra, where this Court and the Fourth Circuit Court of Appeals rejected the taxpayer's position that a guarantee of a loan by a shareholder is an event for which the adjusted basis of the shareholder should be increased. Because an appeal of *89 this case lies with the Fourth Circuit Court of Appeals, we are bound to follow Estate of Leavitt v. Commissioner, supra. Petitioners have not shown that they may increase petitioner's adjusted basis due to a loan or capital contribution made by them to the S corporation in 1981. Therefore, respondent's disallowance of petitioners' net operating loss deduction for 1983 must be sustained. Issue 3. Addition to Tax for a Substantial Understatement
The remaining issue is petitioners' liability in 1983 under section 6661, which imposes an addition to tax in the case of a substantial understatement of income tax. We conclude that petitioners are not liable for the section 6661 addition to tax because there is or was substantial authority for their treatment of petitioner's adjusted basis in his S corporation stock under section 1374(c)(2). Sec. 6661(b)(2)(B)(i). Section 1.6661-3(a)(2), Income Tax Regs., provides: Substantial authority standard. The substantial authority standard is less stringent than a "more likely than not" standard (that is, a greater than 50-percent likelihood of being upheld in litigation), but stricter than a reasonable basis standard (the *90 standard which, in general, will prevent imposition of the penalty under section 6653(a), relating to negligence or intentional disregard of rules and regulations). Thus, a position with respect to the tax treatment of an item that is arguable but fairly unlikely to prevail in court would satisfy a reasonable basis standard, but not the substantial authority standard. Section 1.6661-3(b)(1), Income Tax Regs., provides: There is substantial authority for the tax treatment of an item only if the weight of the authorities supporting the treatment is substantial in relation to the weight of authorities supporting contrary positions. All authorities relevant to the tax treatment of an item, including the authorities contrary to the treatment, are taken into account in determining whether substantial authority exists * * *
Petitioners cite Selfe v. United States, supra, as substantial authority. As noted by petitioners, this Court in Nigh v. Commissioner, T.C. Memo. 1990-349, concluded that the opinion of the Court of Appeals in Selfe had substantial weight at the time of the filing of the return in relation *91 to the weight of contrary authorities and, accordingly, held that the taxpayers were not liable for the section 6661 addition to tax. See sec. 1.6661-3(b)(4)(iii), Income Tax Regs. We likewise hold that petitioners are not liable for the section 6661 addition to tax. To reflect the foregoing, Decision will be entered under Rule 155.
Footnotes
1. All section references are the Internal Revenue Code of 1954 in effect for the year in issue. All Rule references are to the Tax Court Rules of Practice and Procedure.↩