FREDERICK D. DOE AND BARBARA L. DOE, ET AL., [1] Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent Doe v. Commissioner
Docket Nos. 23817-88, 23836-88, 23837-88, 10932-90, 10935-90, 10940-90, 12313-91, 12551-91, 12563-91
United States Tax Court
T.C. Memo 1993-543; 1993 Tax Ct. Memo LEXIS 563; 66 T.C.M. (CCH) 1376; November 22, 1993, Filed *563 Decision will be entered under Rule 155. For petitioners: Kendall O. Schlenker and Barbara A. Schneider. For respondent: Pamelya P. Herndon and Thomas F. Eagan. SHIELDS
SHIELDS
MEMORANDUM FINDINGS OF FACT AND OPINION SHIELDS, Judge: In these consolidated cases, respondent determined deficiencies in and additions to petitioners' Federal income taxes as follows: Frederick D. and Barbara L. Doe, docket Nos. 23817-88, 10932-90, and 12563-91: Additions to tax
Sec.
Sec.
Year
Deficiency
6653(a)(1)
6653(a)(2)
1983
$ 33,820.01
$ 1,691.00
[1]
1984
10,498.44
524.92
[2]
1986
20,160.00
-- --
1987
24,034.00
-- --
1988
22,582.00
1,129.00
--
Additions to tax
Sec.
Sec.
Sec.
Year
6653(a)(1)(A)
6653(a)(1)(B)
6661
1983
--
--
$ 8,455.00
1984
--
--
2,624.61
1986
$ 1,008
[3]
5,040.00
1987
1,202
[4]
6,009.00
1988
--
--
5,646.00
David S. and Margaret C. LaMure, docket Nos. 23836-88, 10935-90, and 12313-91 *564 : Additions to tax
Sec.
Sec.
Year
Deficiency
6653(a)(1)
6653(a)(2)
1983
$ 54,236.17
$ 2,711.81
[1]
1986
15,585.00
-- --
1987
20,240.00
-- --
Additions to tax
Sec.
Sec.
Sec.
Year
6653(a)(1)(A)
6653(a)(1)(B)
6661
1983
--
--
$ 13,559
1986
$   779
[2]
3,896
1987
1,012
[3]
5,060
James E. and Virginia Lankford, docket Nos. 23837-88, 10940-90, and 12551- 91: Additions to tax
Sec.
Sec.
Year
Deficiency
6653(a)(1)
6653(a)(2)
1983
$ 3,443.01
$ 172.15
[1]
1986
34,237.00
-- --
1987
10,717.00
-- --
1988
17,615.00
881.00
--
Additions to tax
Sec.
Sec.
Sec.
Year
6653(a)(1)(A)
6653(a)(1)(B)
6661
1983
--
--
--
1986
$ 1,712
[2]
$ 8,559
1987
536
[3]
2,679
1988
--
--
4,404
The consolidated issues for decision are: (1) Whether, for Federal income *565 tax purposes, Town & Country Sports Enterprises, Inc., an entity created and owned by petitioners, is to be treated as a partnership or as a subchapter S corporation during the years 1983 through 1988; (2) whether we have jurisdiction with respect to the taxable year 1983, since respondent failed to pursue unified proceedings as required by sections 6241 [2] and 6244; (3) if the entity was a subchapter S corporation, whether there was a transfer of assets to the corporation in accordance with section 351; (4) if there was a transfer under section 351, whether petitioners realized gain pursuant to section 357(c); (5) if the entity was a subchapter S corporation, whether petitioners had sufficient basis in their stock to deduct their share of the losses generated by the corporation; (6) whether additions to tax for negligence apply under section 6653(a)(1) and (2) for 1983 and 1984, under section 6653(a)(1)(A) and (B) for 1986 and 1987, and under section 6653(a)(1) for 1988; and (7) whether, under section 6661, the addition to tax for a substantial understatement applies. *566 In addition to the consolidated issues set forth above, there is also at issue the amount, if any, of the charitable deductions allowable to petitioners Doe and Lankford. The amount of these deductions is dependent upon the adjusted gross income of the Lankfords for the taxable year 1983 and the adjusted gross income of the Does for the taxable years 1983 and 1984. FINDINGS OF FACT Some of the facts have been stipulated and are so found. The parties' stipulations together with the attached exhibits are incorporated herein by reference. On the date they filed their petitions, petitioners Doe and petitioners Lankford were residents of Roswell, New Mexico, and petitioners LaMure were residents of Dexter, New Mexico. On April 1, 1982, petitioners Frederick Doe, David LaMure, and James Lankford entered into a partnership agreement for the stated purpose of "owning, developing, operating, leasing and otherwise dealing with real and personal property of any kind, as well as for the ownership, development, operating, leasing or otherwise dealing with any type of recreational facility, bar, restaurant, or retail store in the State of New Mexico." The name of the partnership was to be *567 Town & Country Sports Enterprises, and its principal place of business was to be located in Roswell, New Mexico. Under the partnership agreement each partner was required to contribute $ 5,000 to the partnership and each was allocated one-third of the partnership's profits and losses. Each partner signed the agreement on April 1, 1982. On the same day, April 1, 1982, petitioners David and Margaret LaMure entered into an agreement in which the LaMures agreed to transfer to the partnership for $ 275,000 a liquor license and certain other real and personal properties constituting a bowling alley, restaurant, and bar. In the agreement the purchase price was allocated as follows: $ 18,388 to real estate, $ 50,000 to the liquor license, $ 76,612 to equipment, and $ 130,000 to the bowling alley. In exchange for such properties, the partnership agreed to execute a $ 275,000 note to the LaMures which was to be secured by a mortgage on the real estate. In the completion of the transfer of the assets from the LaMures to the partnership, petitioners encountered difficulties, especially with respect to the transfer of the liquor license. Even though the process to transfer the license began *568 in 1982, it was not concluded until 1985 after David LaMure commenced litigation against the State authorities. In the meantime, the partnership began business on October 1, 1982, and on November 5, 1982, entered into a loan agreement with First City National Bank in Roswell (bank) for the purpose of borrowing $ 1.7 million. This loan was secured by a security agreement on the partnership's furniture, fixtures, equipment, inventory, liquor license, and a first mortgage on the real estate owned by the partnership. The loan was also secured by second mortgages on certain real estate owned by petitioners. Under the loan agreement with the bank, the partnership was to make monthly payments of principal and interest in the amount of $ 22,640. The partners each also executed continuing guarantees which exposed them to joint and several liability for all partnership debts. About October 1, 1982, petitioners became aware of a recent opinion by a New Mexico court in which exposure to tort liabilities by bar owners was significantly expanded. Because of this potential personal exposure to tort liability from the operation of a business selling alcoholic beverages, petitioners decided *569 to incorporate the partnership. The incorporation was to be effective as of January 1, 1983. Petitioners filed a Form 1065, United States Partnership Return of Income, with respondent for the period October 1, 1982, through December 31, 1982. The return was designated as being the partnership's final return. On January 20, 1983, petitioners executed and filed with the New Mexico State Corporation Commission articles of incorporation for Town & Country Sports Enterprises, Inc. In the articles of incorporation David LaMure, Frederick Doe, and James Lankford were named as the initial members of the board of directors of the corporation, as well as its incorporators. Their signatures appeared in the articles immediately below a certification to the truth of the facts contained in the document. On January 21, 1983, the New Mexico State Corporation Commission issued a certificate of incorporation to Town & Country Sports Enterprises, Inc.
Also on January 21, 1983, all six petitioners, as shareholders of the corporation, signed and filed with respondent a Form 2553, Election to be Taxed as a Small Business Corporation. This form indicates that each married couple jointly owned 500 *570 shares of stock of the corporation and that such stock was acquired on January 21, 1983. In addition, the form indicates that January 21, 1983, was the date on which the corporation first had shareholders and assets and began doing business. By letter dated May 2, 1983, respondent accepted petitioners' election to be taxed as a small business corporation and assigned the corporation a Federal employer identification number. For the calendar year 1983, the income and expenses of the corporation were reported by petitioners to respondent on a Form 1120S. Petitioners continued to file with respondent for the corporation similar returns for each of the years 1984 through 1988. The 1983 and 1985 corporate returns as well as an amended 1987 corporate return were signed by David LaMure, as president of the corporation. The 1984, 1988, and the original 1987 corporate returns were signed by James E. Lankford, as secretary of the corporation. The 1986 corporate return was signed by Frederick Doe. This return bears no indication of his capacity with the corporation. Petitioners filed with respondent a Form 941, Employer's Quarterly Federal Tax Return, for each of the last three quarters *571 in 1982 using the partnership's name and an identification number acquired for the partnership from respondent. For the first quarter of 1983 they filed on May 5, 1983, a blank Form 941 for the partnership on which they indicated that it was no longer liable for such returns since the last date on which wages were paid by the partnership was December 31, 1982. For the corporation petitioners filed with respondent Forms 941 for each of the quarters in 1983 through 1985, using the identification number acquired for the corporation from respondent. Using its identification number the partnership filed with respondent a Form 940, Employer's Annual Federal Unemployment Tax Return, for 1982. For the years 1983 through 1988, the corporation filed with respondent Forms 940, using its identification number. On August 5, 1985, petitioners and the corporation jointly filed a lawsuit in the U.S. District Court for New Mexico against Moncor Bank of Roswell, in which they alleged that officers of the bank made false representations to them with the purpose of inducing petitioners to borrow money. In the complaint Town & Country Sports Enterprises is referred to as a corporation and not a *572 partnership, and petitioners are referred to as former partners in a partnership which was the predecessor in interest to the corporation. In its answer to the complaint, Moncor referred to Town & Country Sports Enterprises as a corporation, an allegation not refuted by petitioners. In 1987 the Federal Deposit Insurance Corporation (FDIC) filed a complaint for collection of debt and foreclosure against, inter alia, Margaret LaMure, Barbara Doe, and Virginia Lankford. This complaint was filed because the promissory note originally given to David LaMure as part payment for the land purchased by the partnership was allegedly in default. In their answers and counterclaims, Margaret LaMure, Barbara Doe, and Virginia Lankford alleged that Town & Country Sports Enterprises was a corporation, and that David LaMure, James Lankford, and Frederick Doe were formerly partners in a partnership which was a predecessor in interest to the corporation. The parties to the lawsuit brought by FDIC ultimately entered into a settlement agreement which also referred to Town & Country as a corporation. All six petitioners signed the settlement agreement. That agreement contains six separate paragraphs, *573 each of which refers to one of petitioners. In each of the three paragraphs referring to petitioners David S. LaMure, James E. Lankford, and Frederick D. Doe, it is averred that such individual "as an officer of Town & Country Sports Enterprises states that he has carefully read the * * * Agreement, knows the contents thereof, and has had it fully explained to him by his attorney and signed the same as his own free act." In each of the three paragraphs referring to petitioners Margaret C. LaMure, Virginia Lankford, and Barbara L. Doe, it is averred that such "individual states that she has carefully read the * * * Agreement, knows the contents thereof, and has had it fully explained to her by her attorney and signed the same as her own free act." Financial statements for 1982 were prepared for Town & Country Sports Enterprises, the partnership, by the accounting firm of Deason, Peters, Stockton & Co. (Deason-Peters). The balance sheet for the yearend reflects capital accounts for the partners and a footnote stating that the entity is a partnership. The yearend balance sheets prepared by the accounting firm for Town & Country Sports Enterprises, Inc., the corporation, for the years *574 1983 and 1984, reflect that the stockholders' equity is represented by 1,500 shares of stock issued and outstanding. The number of outstanding shares reported by the corporation on its balance sheets for 1983 and 1984 corresponds with the amount of issued and outstanding shares reflected on the Form 2553, the subchapter S election, filed by the corporation with respondent. The experience history of Town & Country, the partnership, with the Employment Security Division of the New Mexico Department of Labor was transferred to Town & Country, the corporation. The employment forms filed with the New Mexico Department of Labor for the years 1983 through 1988 indicate that the employer is the corporation, Town & Country Sports Enterprises, Inc., and not Town & Country Sports Enterprises, a partnership. For the taxable year 1983, Town & Country Sports Enterprises, Inc., timely filed a corporate tax return with respondent on which it claimed a loss of $ 357,366. On their 1983 joint Federal income tax returns, each pair of petitioners deducted their pro rata share of the loss reported by the corporation. After audit, respondent allowed the losses claimed by petitioners Lankford, LaMure, *575 and Doe for the taxable year 1983 to the extent of $ 43,000, $ 43,000, and $ 42,800, respectively, the amounts of their basis in the stock in the corporation. On its corporate income tax returns for 1986 and 1987, Town & Country Sports Enterprises, Inc., claimed losses of $ 280,087 and $ 96,290, respectively. Each pair of petitioners deducted $ 93,363 and $ 32,097 as their pro rata portion of the claimed corporate losses on their joint income tax returns for the same taxable years. Upon audit of petitioners' 1986 returns, respondent increased the loss claimed by each pair of petitioners in 1986 to $ 103,306.20, but determined that petitioners did not have a sufficient basis in their stock to allow the deduction of the entire amount of the losses claimed. On July 7, 1988, respondent mailed to petitioners the deficiency notices involved herein. For the taxable year 1988, Town & Country Sports Enterprises, Inc., did not file a corporate income tax return. Instead Town & Country Sports Enterprises, the partnership, filed in February 1989 a partnership return, claiming a loss in 1988 of $ 135,624. On their 1988 returns, each pair of petitioners claimed $ 45,208 as their proportionate *576 share of the loss reported on the partnership return for 1988. In February of 1989, Town & Country Sports Enterprises, the partnership, filed delinquent partnership returns for 1983 through 1987 which included the activities previously reported for those years by Town & Country Sports Enterprises, Inc. At or about the same time, Town & Country Sports Enterprises, Inc., filed amended corporate returns for the same years. The amended corporate returns reflected no corporate activity and no income or deductions for the years 1983 through 1987. Respondent disregarded the partnership return that was filed by Town & Country Sports Enterprises for 1988, determined that a corporate return should have been filed for that year by Town & Country Sports Enterprises, Inc., determined that the $ 45,208 partnership loss that each pair of petitioners claimed for 1988 was attributable to the corporation and not the partnership, and disallowed the deduction of such losses by petitioners because they did not have a sufficient basis in their corporate stock. OPINION Issue 1. Whether, for Federal Income Tax Purposes, the Entity at Issue Is To Be Treated as a Partnership or a Corporation
*577 Petitioners contend that the entity known as Town & Country which they organized as a partnership in April of 1982 continued to be a partnership during the years 1983 through 1988 because the entity's incorporation was never completed. Whether or not the incorporation was completed is a matter of State law. Stoody v. Commissioner, 66 T.C. 710, 716 (1976) (citing Skarda v. Commissioner, 27 T.C. 137, 144 (1956), affd. 250 F.2d 429 (10th Cir. 1957)). The applicable law of New Mexico provides that upon delivery of the articles of incorporation of a new corporation to the State Corporation Commission, "the corporate existence shall begin, and the certificate of incorporation shall be conclusive evidence that all conditions precedent required to be performed by the incorporators have been complied with and that the corporation has been incorporated". N.M. Stat. Ann. sec. 53-12-4 (Michie 1993). As set forth in our findings, petitioners delivered the articles of incorporation of Town & Country Sports Enterprises, Inc., to the State commissioner on January 20, 1983, and on January 21, 1983, received *578 a certificate of incorporation. Therefore, under New Mexico law, the corporate existence of Town & Country Sports Enterprises, Inc., commenced on January 20, 1983. We now turn to the question of whether its corporate existence should be recognized for Federal income tax purposes during the years under consideration. This is a question of Federal law. Stoody v. Commissioner, supra at 716-717 (citing Carver v. United States, 188 Ct. Cl. 202, 412 F.2d 233 (1969)). In Moline Properties, Inc. v. Commissioner, 319 U.S. 436, 438 (1943), the Supreme Court concluded that a corporate entity will not be ignored where it is created for business purposes or it actually conducts business following its incorporation. Furthermore, "the degree of corporate business purpose or activity required to recognize the separate existence of a corporation is extremely low." Stoody v. Commissioner, supra at 717. In Stoody the entity was organized, entered into lease agreements, and was open for business for only 4 months. Nevertheless it was concluded *579 that the entity was not a passive dummy whose corporate form should not be recognized for Federal income tax purposes. In Skarda v. Commissioner, 27 T.C. 137 (1956), affd. 250 F.2d 429 (10th Cir. 1957), the taxpayer claimed that a partnership never came into existence as a corporation even though the articles of incorporation were filed with the appropriate State authorities and a certificate of incorporation was issued, since there were no other corporate activities such as stockholders meetings, adoption of bylaws, election of officers, preparation of minutes, issuance of stock, or transfers of title to property by the partnership to the corporation. The business activity in the corporate name was limited to the publication of a newspaper, maintenance of a checking account, setting up books which reflected a capital stock account, the receipt of supplies, and the extension of credit. Even though no other corporate formalities were adhered to, we concluded that the entity held itself out to the public as a corporation, and engaged "'in some industrial, * * * [and] other activity besides avoiding taxation: in other words, *580 * * * the term "corporation" will be interpreted to mean a corporation which does some "business" in the ordinary meaning'". Id. at 145 (quoting National Investors Corp. v. Hoey, 144 F.2d 466, 468 (2d Cir. 1944)). In the present case, we have found that upon learning they, as partners in the partnership, might be subject to personal liability under State law for torts committed by patrons of the partnership's bar, petitioners decided, after some discussion and consideration, to incorporate their partnership in order to avoid such personal liability. Consequently, they prepared and filed articles of incorporation with the State corporate commissioner and received a certificate of incorporation. They then filed with respondent an election to be taxed as a subchapter S corporation. Thereafter they filed corporate income tax returns for 5 consecutive years. During the same period they also filed with respondent quarterly employment tax returns and annual unemployment tax returns for the corporation. In addition to the above activity with respondent, petitioners during the same 5-year period filed documents with the U.S. *581 District Court for New Mexico in which they repeatedly referred to the entity as a corporation and to themselves as stockholders and officers, and to their partnership as being a predecessor to the corporation. Petitioners LaMure and Doe also had their accountant compile personal financial statements in which their interest in Town & Country Sports Enterprises was reflected as being corporate stock. Furthermore, the corporation, holding itself out as such, entered into leases with other business entities. We conclude, therefore, that under the law of New Mexico petitioners formed a valid corporation in January of 1983, that one of their reasons for electing to organize a corporation was to avoid possible tort liability from operating their business as a partnership, and that from January of 1983 through December of 1987 petitioners caused the corporation to operate the business, to file appropriate tax returns, and to repeatedly hold itself out as the owner and operator of the business. Having so chosen, petitioners cannot now disavow the corporate existence and elect to have the corporation ignored for tax purposes. Gray v. Powell, 314 U.S. 402 (1941); *582 Estate of Durkin v. Commissioner, 99 T.C. 561 (1992); Schuerholz v. Commissioner, T.C. Memo. 1976-163 (citing Strong v. Commissioner, 66 T.C. 12 (1976), affd. without published opinion 553 F.2d 94 (2d Cir. 1977)). Issue 2. Whether We Have Jurisdiction To Determine the Amounts of Petitioners' Basis in Their Stock
Petitioners contend that under the provisions of the Tax Equity and Fiscal Responsibility Act of 1982 (TEFRA), Pub. L. 97-248, secs. 401-406, 96 Stat. 648, we do not have jurisdiction to determine petitioners' basis in their stock in Town & Country Sports Enterprises, Inc., since no notice of final subchapter S administrative adjustment (FSAA) was issued to the corporation by respondent. Either party, or the Court sua sponte, can raise the issue of jurisdiction at any time. Normac, Inc. v. Commissioner, 90 T.C. 142, 146 (1988); Kahle v. Commissioner, 88 T.C. 1063, 1063 n.3 (1987); Brown v. Commissioner, 78 T.C. 215, 218 (1982). When raised, the question *583 of jurisdiction must be resolved, and we have jurisdiction to make that determination. Normac, Inc. v. Commissioner, supra; Wheeler's Peachtree Pharmacy, Inc. v. Commissioner, 35 T.C. 177, 179 (1960); Okon v. Commissioner, T.C. Memo. 1993-24. Congress enacted the TEFRA provisions in order to provide consistent treatment of partnership items among all partners, and to provide judicial economy from unified audit proceedings. TEFRA rules originally applied only to partnerships. However, Congress subsequently made them generally applicable to subchapter S corporations for tax years beginning after December 31, 1982. Sec. 6244; Subchapter S Revision Act of 1982, Pub. L. 97-354, sec. 4(a), 96 Stat. 1669, 1691; Dial USA, Inc. v. Commissioner, 95 T.C. 1, 3 (1990). In order for the TEFRA rules to apply to a subchapter S corporation, the items at issue must be "subchapter S items". Sec. 301.6245-1T, Temporary Proced. & Admin. Regs., 52 Fed. Reg. 3003 (Jan. 30, 1987). In the cases before us, respondent did not issue an FSAA to the *584 corporation. She merely challenged the amount of basis claimed by petitioners with respect to their stock on their individual income tax returns. The only issue in these cases which relates to the subchapter S corporation is the adjustments made by respondent to the shareholders' basis in their stock. A shareholder's basis in subchapter S stock is not an item which is to be determined in a proceeding at the corporate level. University Heights v. Commissioner, 97 T.C. 278, 280 (1991); Dial USA Inc., v. Commissioner, supra at 5-6. Consequently, since respondent issued timely statutory notices of deficiency and petitioners timely filed their petitions, we have jurisdiction to determine the amounts of petitioners' basis in their stock. Issue 3. Whether There Was a Transfer of Assets Under Section 351
Petitioners contend that even if Town & Country is treated as a corporation for Federal income tax purposes, there was no transfer of assets to the corporation and, as a result, section 351(a) is not applicable. Respondent, however, contends that petitioners contributed the assets of the partnership to the corporation *585 and that section 351(a) applies to the transfer. Section 351(a) provides as follows: No gain or loss shall be recognized if property is transferred to a corporation by one or more persons solely in exchange for stock or securities in such corporation and immediately after the exchange such person or persons are in control (as defined in section 368(c)) of the corporation.
As set forth in our findings, Town & Country Sports Enterprises, Inc., held itself out to the public as a corporation for 5 years under its corporate name. For 5 consecutive years (1983 through 1987), the entity filed corporate income tax returns. These returns, all of which were signed by one or more of petitioners, reflect that the corporation had assets. Furthermore, the 1983 corporate return contains an opening balance sheet that reflects assets and liabilities in amounts and types which are almost identical to those shown on the ending balance sheet of the partnership's 1982 final return. We also note with interest the timing of petitioners' discovery that they intended that the entity be treated as a partnership all along. Respondent's deficiency notices were issued to petitioners on July 7, *586 1988. Petitioners filed delinquent partnership returns and amended corporate returns for 1983 through 1987 with respondent on February 16, 1989. It is apparent, therefore, that petitioners made no attempt to claim that the partnership during 1983 through 1987 was still viable and the corporation was not until after they were aware of respondent's position. Petitioners' accountant testified that he was under the impression that the assets were transferred from the partnership to the corporation in 1983. The accountant also prepared personal financial statements for petitioners Frederick Doe and David LaMure for the years 1983 through 1987, which statements reflected that Doe and LaMure owned stock in Town & Country Sports Enterprises, Inc. Under these circumstances, it is impossible to conclude, as argued by petitioners, that corporate returns rather than partnership returns were mistakenly filed with respondent for the years 1983 through 1987. In fact, the testimony and other evidence in the record before us is so conflicting and at odds with petitioners' assertions that it is obvious that petitioners have failed to carry their burden of proof on this issue. Rule 142(a); Welch v. Helvering, 290 U.S. 111 (1933). *587 We conclude, therefore, that with the exception of the liquor license, petitioners have failed to establish that the partnership assets were not transferred to the corporation at or near the beginning of 1983. It is apparent from the record before us that the liquor license was not transferred to the corporation on the records of the State until March 31, 1986. However, the record before us also clearly indicates that the liquor license was used by Town & Country Sports Enterprises, Inc., from the date of its incorporation even though the formal entry of transfer of the license on the State records was delayed as the result of a dispute between petitioners and the New Mexico Department of Alcoholic Beverage Control. We conclude that all of the assets of the partnership, including the liquor license, were transferred to the corporation under section 351. Issue 4. Whether Petitioners Realized Gain Under Section 357(c)
On November 5, 1982, the partnership and petitioners executed a promissory note and security agreement in favor of First City National Bank in the amount of $ 1.7 million. The note contains a statement to the effect that the partnership granted to the bank *588 a security interest in all mortgages, inventory, equipment, the liquor license, and the proceeds and unearned premiums of any property, life, health, or accident insurance owned by the partnership. A security agreement and financing statement entered into by the partnership and the bank further describes the collateral for the loan as "All of the furniture, fixtures, and equipment now owned or hereafter acquired and which are necessary in the operation of * * * [the partnership], including, but not limited to, that described on" a schedule attached to the security agreement. The schedule lists in detail properties owned by the partnership, including a liquor license. In addition, each of the three partners personally guaranteed the note. As we concluded above, all of the assets of the partnership were transferred to the corporation in accordance with section 351. Transfers under section 351 usually qualify for nonrecognition of gain. However, respondent contends that, in this case, petitioners realized under section 357 a total gain of $ 139,485.06 because the total encumbrances on the partnership assets transferred to the corporation exceeded the partnership's basis in such *589 assets by that amount. Insofar as pertinent here, section 357 reads as follows: SEC. 357. ASSUMPTION OF LIABILITY. (a) General Rule. -- Except as provided in subsections (b) and (c), if -- (1) the taxpayer receives property which would be permitted to be received under section 351 * * * without the recognition of gain if it were the sole consideration, and (2) as part of the consideration, another party to the exchange assumes a liability of the taxpayer, or acquires from the taxpayer property subject to a liability,
then such assumption or acquisition shall not be treated as money or other property, and shall not prevent the exchange from being within the provisions of section 351 * * *.
* * * (c) Liabilities In Excess of Basis. -- (1) In General. -- In the case of an exchange -- (A) to which section 351 applies, * * * * * * if the sum of the amount of the liabilities assumed, plus the amount of the liabilities to which the property is subject, exceeds the total of the adjusted basis of the property transferred pursuant to such exchange, then such excess shall be considered as a gain from the sale or exchange of a capital asset or of property which is *590 not a capital asset, as the case may be.
In this case the parties have stipulated that the book value and tax value of the liabilities on the partnership's books exceeded the book value and tax value of the assets as of December 31, 1982, by $ 139,485.06. However, petitioners contend that section 357(c) is not applicable because the corporation never became liable on the note. In support of this assertion, they point to testimony by their accountant to the effect that he advised them to keep the corporate name from appearing on the loan or its documentation so that the loan would be a shareholder loan and not a corporate debt. In other words, petitioners contend that since the corporation did not assume the debt, such debt is not included in the computation made under section 357(c). Petitioners misconstrue section 357(c). Section 357(c)(1)requires that in determining whether gain must be recognized, the sum of the amount of the liabilities assumed plus the amount of the liabilities to which the contributed property is subject is to be compared with the total of the adjusted basis of the property transferred. It is true that the corporation did not specifically assume the *591 $ 1.7 million liability. However, the corporation received the contributed property subject to the debt, and that is sufficient to bring the transfer within the application of section 357(c)(1). See Smith v. Commissioner, 84 T.C. 889, 909 (1985) (citing Rosen v. Commissioner, 62 T.C. 11, 19 (1974), affd. without published opinion 515 F.2d 507 (3d Cir. 1975)) (holding that "So long as the transferred property remains liable on the debt, then, such debt can be a section 357(c) liability even if petitioner retained personal, unrelieved liability on it."), affd. without published opinion 805 F.2d 1073 (D.C. Cir. 1986); see also Owen v. Commissioner, 881 F.2d 832 (9th Cir. 1989), affg. T.C. Memo. 1987-375. Issue 5. Whether Petitioners Have Sufficient Basis in Their Stock To Deduct Losses Incurred by the Corporation
Section 1366(d)(1)permits a shareholder in an S corporation to deduct a proportionate share of the corporation's losses to the extent that such losses do not exceed the sum of the shareholder's *592 adjusted basis in the stock plus any indebtedness of the corporation to the shareholder. See Keech v. Commissioner, T.C. Memo. 1993-71. Petitioners contend that they had sufficient basis in their stock to deduct the losses incurred by the S corporation for the taxable years at issue. In support of this contention, they assert that they made economic outlays on the note entered into by the partnership, its partners, and First City National Bank. Respondent, however, asserts that the corporation, and not petitioners, made payments on the loan and that petitioners' guarantees of the loan, without more, are insufficient to allow an increase in the basis of their stock. First City National Bank entered into a contract with Town & Country Sports Enterprises, the partnership, and its three partners for the purpose of lending $ 1.7 million to the partnership. In the contract, each partner in his individual capacity entered into a continuing joint and several guarantee agreement with the bank. Petitioners also contend that they actually made out-of-pocket payments on the loan, and that under section 1366(d)(1) they are entitled to an increase in the basis *593 of their stock as a result of such payments. The record, however, contains no evidence of any such direct payments by petitioners. In order to obtain an increase in their stock basis, petitioners must show that they made an economic outlay. Estate of Leavitt v. Commissioner, 90 T.C. 206, 212 (1988), affd. 875 F.2d 420 (4th Cir. 1989); Blum v. Commissioner, 59 T.C. 436, 440 (1972); Uri v. Commissioner, T.C. Memo. 1989-58, affd. 949 F.2d 371 (10th Cir. 1991). The term "basis" is defined in section 1012, which provides the general rule that "The basis of property shall be the cost of such property". Section 1.1012-1(a), Income Tax Regs., defines "cost" as "the amount paid for such property in cash or other property." This Court held in Estate of Leavitt v. Commissioner, supra at 216, that a shareholder's guarantee of a loan to a subchapter S corporation may not be treated as an equity investment in the corporation absent an economic outlay by the shareholder. In that case, the shareholders in an S *594 corporation signed guarantee agreements whereby they agreed to be jointly and severally liable for the corporation's indebtedness to a bank. The loan was granted only because of the financial strength of the shareholder-guarantors. In compiling its financial statements and tax returns, the corporation in Estate of Leavitt consistently listed the loan as a liability. It also made the principal and interest payments on the loan. In addition, the shareholders in Estate of Leavitt were never called upon to make any payments on the loan that they guaranteed. Nevertheless, the shareholders maintained that their guarantees of the loan to the corporation from the bank increased their basis in their stock, thereby allowing them to deduct their proportionate share of the corporation's losses. We concluded as follows: "the fact that shareholders may be primarily liable on indebtedness of a corporation to a third party does not mean that this indebtedness is 'indebtedness of the corporation to the shareholder' within the meaning of section 1374(c)(2)(B). [3] No form of indirect borrowing, be it guaranty, surety, accommodation, comaking or otherwise, gives rise to indebtedness *595 from the corporation to the shareholders until and unless the shareholders pay part or all of the obligation. * * *"
Estate of Leavitt v. Commissioner, supra at 211 (quoting Raynor v. Commissioner, 50 T.C. 762, 770-771 (1968)). In the case before us, the partnership, prior to its incorporation, borrowed $ 1.7 million from a bank. Petitioners, as partners of the partnership, entered into continuing guarantee agreements under which they were jointly and severally liable for payments on the loan. Checks made payable to the bank in the amount of the monthly loan payment were written on the corporation's bank account. The balance sheets attached to the corporation's tax returns for the years at issue reflect a liability in the approximate amount of the loan. See Ley v. Commissioner, T.C. Memo. 1993-306. *596 In addition, financial statements prepared for the corporation during such years also reflect an indebtedness to the bank of approximately $ 1.7 million. The financial statements also reflect interest expenses in amounts consistent with the interest due on such a loan. Financial statements prepared by petitioners Doe and LaMure during the years at issue make no reference to an obligation to make payments on the loan obtained from First City National Bank. This failure of Doe and LaMure to list the note in spite of its size tends to indicate they did not feel obligated, even contingently, for either its principal or interest. Under the circumstances set forth herein, we conclude that petitioners have failed to carry their burden of establishing that they made any payment on the note or any other economic outlay which qualifies as an increase in the basis of their stock in the corporation. We recognize that under certain circumstances the basis of petitioners in the corporate stock received by them upon the incorporation of their partnership could conceivably have included the balance due at that time on the partnership note to the bank in the original amount of $ 1.7 million. *597 However, from the record before us we are unable to determine what effect if any the partnership note guaranteed by petitioners has upon petitioners' basis in the stock of the corporation. It is clear that petitioners have failed to carry their burden of proving that they had sufficient basis in their stock to permit the entire deduction of the corporation's losses for the taxable years at issue. Issue 6. Additions to Tax for Negligence
Respondent determined that petitioners are liable for additions to tax for negligence under section 6653(a)(1) and (2) (and under section 6653(a)(1)(A) and (B) for 1986 and 1987). Section 6653(a)(1)provides that where any part of any underpayment of tax is due to negligence or intentional disregard of rules and regulations, an amount equal to 5 percent of the underpayment shall be added to the tax. With respect to the portion of the underpayment attributable to negligence or intentional disregard of rules and regulations, section 6653(a)(2) provides that an amount equal to 50 percent of the interest payable under section 6601 shall be added to the tax. For purposes of section 6653, negligence is defined as a lack of due care or failure *598 to do what a reasonable and ordinarily prudent person would do under the circumstances. Cloud v. Commissioner, 97 T.C. 613, 630 (1991) (citing Neely v. Commissioner, 85 T.C. 934, 947 (1985)). In light of our findings and conclusion for the addition to tax for a substantial understatement set forth below, we conclude that petitioners were not negligent with respect to the portions of the underpayments attributable to the Estate of Leavitt issue. See Keech v. Commissioner, T.C. Memo. 1993-71; Nigh v. Commissioner, T.C. Memo. 1990-349. Issue 7. The Addition to Tax for Substantial Understatement of Income Tax
Respondent also determined that petitioners are liable for the addition to tax under section 6661 for a substantial understatement of tax. Section 6661(a)provides that where there is a substantial understatement, an addition to tax equal to 10 percent of the amount of the underpayment attributable to such understatement shall apply. The term "understatement" is defined as the excess of the amount of tax required to be shown on the return over *599 the amount actually shown. Sec. 6661(b)(2)(A). The understatement may be reduced by any portion thereof which is attributable to the tax treatment of any item for which there is substantial authority or for which the taxpayer adequately disclosed the facts relevant to the item's tax treatment. Sec. 6661(b)(2)(B). On brief, petitioners contend that the rationale in Estate of Leavitt supports their position that they were entitled to an increase in their stock basis as a result of the loans made by the bank to the corporation. With respect to the portions of the underpayments attributable to the Estate of Leavitt issue, we find that petitioners are not liable for the addition to tax for a substantial understatement under section 6661. See Keech v. Commissioner, T.C. Memo. 1993-71; Nigh v. Commissioner, T.C. Memo. 1990-349. Issue 8. The Amount of the Charitable Deduction Allowed to Petitioners Doe and Lankford
With respect to this unconsolidated issue, petitioners Doe and Lankford entered into a stipulation that the amount of the charitable deductions for the taxable years 1983 and 1984 for the Does, *600 and 1983 for the Lankfords, is dependent upon the amount of petitioners' adjusted gross income in each of those taxable years. Therefore, this issue will be resolved in the computations under Rule 155. Decisions will be entered under Rule 155. Footnotes
1. Cases of the following petitioners are consolidated herewith: David S. and Margaret C. LaMure, docket Nos. 23836-88, 10935-90, and 12313-91, James E. and Virginia Lankford, docket Nos. 23837-88, 10940-90, and 12551-91, and Frederick D. and Barbara L. Doe, docket Nos. 10932-90 and 12563-91.↩
1. 50 percent of the interest due on $ 33,820.01.↩
2. 50 percent of the interest due on $ 10,498.44.↩
3. 50 percent of the interest due on $ 20,160.↩
4. 50 percent of the interest due on $ 24,034.↩
1. 50 percent of the interest due on $ 54,236.17.↩
2. 50 percent of the interest due on $ 15,585.↩
3. 50 percent of the interest due on $ 20,240.↩
1. 50 percent of the interest due on $ 3,443.01.↩
2. 50 percent of the interest due on $ 34,237.↩
3. 50 percent of the interest due on $ 10,717.↩
2. Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for the taxable years at issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.↩
3. Sec. 1374 was reenacted in 1982 as sec. 1366(d)(1)↩ in part II of the Subchapter S Revision Act of 1982, Pub. L. 97-354, sec. 2, 96 Stat. 1669, 1677-1678.