116 F.3d 1489
 80 A.F.T.R.2d 97-5535, 97-1 USTC P 50,460
 NOTICE: Although citation of unpublished opinions remains unfavored, unpublished opinions may now be cited if the opinion has persuasive value on a material issue, and a copy is attached to the citing document or, if cited in oral argument, copies are furnished to the Court and all parties. See General Order of November 29, 1993, suspending 10th Cir. Rule 36.3 until December 31, 1995, or further order.
 Frederick D. DOE, Barbara L. Doe, David S. LaMure, Margaret
C. LaMure, James E. Lankford, Virginia Lankford,
Petitioners-Appellants,
v.
COMMISSIONER OF INTERNAL REVENUE, Respondent-Appellee.
 Nos. 10932-90, 10935-90, 10940-90, 12313-91, 12551-91,
12563-91, 23817-88, 23836-88, 94-9013.
 United States Court of Appeals, Tenth Circuit.
 June 2, 1997.
 
 Before ANDERSON, HENRY, and BRISCOE, Circuit Judges.
 ORDER AND JUDGMENT
 Robert H. Henry, Judge.
 
 
 1
 Appellants Frederick and Barbara Doe, David and Margaret LaMure, and James and Virginia Lankford appeal the United States Tax Court's ruling affirming the Commissioner of the Internal Revenue Service's (the Commissioner's) assessment of deficiencies in their income tax payments for the tax years 1983, 1984, 1986, 1987, and 1988. See Doe v. Commissioner, 66 T.C.M. (CCH) 1376 (1993).
 
 
 2
 For the 1983 tax year, the the Tax Court agreed with the Commissioner that the Does, LaMures, and Lankfords realized gain from the transfer of property from a preexisting partnership to Town and Country Sports Enterprises, Inc., a subchapter S corporation. For 1983, the Tax Court also affirmed the Commissioner's findings that the Does', LaMures', and Lankfords' basis in the stock and debt of the Town and Country subchapter S corporation was insufficient to allow them to each deduct their pro rata share of the corporation's losses. For 1984, the Tax Court affirmed the disallowance of the Does' rental loss deduction and the redetermination of their contribution deduction. Finally, for 1986, 1987, and 1988, the Tax Court affirmed the Commissioner's conclusion that, just as for 1983, the Does, the LaMures, and the Lankfords lacked sufficient basis in the Town and Country subchapter S corporation's stock and debt and that, as a result, the taxpayers' deductions of their pro rata share of the corporation's losses should be disallowed.
 
 
 3
 On appeal to this court, the Does, LaMures and Lankfords maintain that under the Subchapter S Revision Act of 1982 (SSRA), 26 U.S.C. §§ 6241-45, the Commissioner was required to conduct an audit of the Town and Country subchapter S corporation at the entity level and issue a final notice of subchapter S administrative adjustment before assessing the deficiencies against them individually. Because the Commission did not issue such a notice, the Does, LaMures, and Lankfords argue, the Tax Court lacked jurisdiction. In the alternative, they argue that the preexisting partnership did not transfer property to the subchapter S corporation and that, as a result, they did not realize the alleged gain in 1983. They also argue that they did have a sufficient basis in the subchapter S corporation's stock and debt to allow them to deduct their pro rata share of its losses.
 
 
 4
 We reach different conclusions for the five tax years involved.
 
 
 5
 As to the deficiencies for 1983, we first conclude that the Tax Court had jurisdiction to assess both categories of deficiencies at issue: (1) the deficiencies attributable to the alleged transfer of property from the preexisting partnership to the Town and Country subchapter S corporation; and (2) the deficiencies attributable to the taxpayers' allegedly insufficient basis in the Town and Country subchapter S corporation's stock and debt. However, on the merits, we reach different conclusions for each category of deficiencies. As to the first category of deficiencies, we conclude that the Tax Court erred in finding that the preexisting partnership transferred property to the Town and Country subchapter S corporation and that the taxpayers realized gain from this alleged transfer. In contrast, as to the second category of deficiencies for 1983, we agree with the Tax Court that the Does, LaMures, and Lankfords lacked sufficient basis in the Town and Country subchapter S corporation's stock and debt to deduct their pro rata share of its losses on their 1983 returns. We therefore affirm in part and reverse in part the Tax Court's decision regarding the Does', LaMures', and Lankfords' tax liability for 1983.
 
 
 6
 As to 1984, we conclude that the Tax Court had jurisdiction and that it acted properly in determining the deficiencies.
 
 
 7
 As to the specified deficiencies for the tax years 1986, 1987, and 1988, we conclude that, the Tax Court lacked jurisdiction. As to these latter deficiencies, we reverse the Tax Court's decision and remand to the Tax Court with instructions to dismiss the Commissioner's claims.
 
 I. BACKGROUND
 
 8
 This dispute concerns the proper tax treatment of Town and Country Sports Enterprises, Inc., an entity originally established as a partnership by appellants Dr. Frederick Doe, Dr. David LaMure, and Dr. James Lankford to operate a bar, restaurant, and bowling alley in Roswell, New Mexico.[1] In April 1982, Drs. Doe, LaMure, and Lankford entered into a partnership agreement establishing the Town and Country partnership and providing that each of them would contribute $5,000 and share equally in the partnership's profits and losses. The Town and Country partnership purchased a restaurant, bar, bowling alley, and liquor license from Dr. LaMure and his wife, Margaret, for $275,000. In exchange for the property, the partnership executed a $275,000 promissory note secured by a mortgage on the real estate. The partnership opened the facility for business in October 1982.
 
 
 9
 In November 1982, the partnership borrowed $1.7 million from the First City National Bank in Roswell, securing the loan through a second mortgage on the partnership's real estate. In addition, Drs. Doe, LaMure, and Lankford executed second mortgages on individually-owned property and signed continuing guarantees making them jointly and severally liable for all the partnership's debts.
 
 
 10
 In the fall of 1982, the Town and Country partners learned of a recent New Mexico court decision expanding the tort liability of businesses selling alcohol. In light of their potential exposure, the partners decided to incorporate the partnership as a subchapter S corporation. In January 1983, they filed articles of incorporation for the Town and Country corporation with the New Mexico Corporation Commission, and the Commission then issued a certificate of incorporation. The Does, LaMures, and Lankfords also filed an Internal Revenue Service Form 2253, an Election to be Taxed as a Small Business Corporation. The form reported that each couple jointly owned 500 shares of stock in the corporation. In May 1983, the Internal Revenue Service accepted the Town and Country corporation's election to be taxed as a small business corporation and assigned it a federal tax identification number.
 
 
 11
 From 1983 to 1987, the Does, LaMures, and Lankfords repeatedly represented Town and Country to be a subchapter S corporation. They filed corporate tax returns for the Town and Country corporation on an IRS Form 1120 S--the income tax form for a subchapter S corporation. Pleadings in various lawsuits filed on behalf of the Town and Country corporation, with the knowledge and consent of the Does, LaMures, and Lankfords, described the entity as a corporation, as did financial statements prepared for the Town and Country corporation by an accounting firm. For the tax years 1983, 1986, and 1987, the Town and Country corporation filed corporate tax returns claiming losses, and the Does, LaMures, and Lankfords deducted their pro rata share of those losses on their individual returns for those years.
 
 
 12
 In July 1988, over five years after the initial Form 1120 S returns were filed, the Commissioner issued notices of deficiency to the Does, LaMures, and Lankfords for the 1983 tax year. The Commissioner disallowed a substantial portion of the claimed deductions for the Town and Country corporation's losses because the amounts deducted exceeded the taxpayers' basis in the stock. The Commissioner also determined that, under 26 U.S.C. § 357, the Does, LaMures, and Lankfords were required to recognize the gain that had resulted from the transfer of assets from the Town and Country partnership to the Town and Country corporation. The Commissioner reasoned that the taxpayers had transferred to the corporation property that was subject to a debt and that, because the debt exceeded their adjusted basis in the property, they realized gain from the transfer.
 
 
 13
 Following the issuance of the July 1988 deficiency notices, the Does, LaMures, and Lankfords sought to recharacterize Town and Country as a partnership. For the tax year 1988, Town and Country filed a partnership return instead of a corporate return. On their individual returns for 1988, the Does, LaMures, and Lankfords each claimed one third of the Town and Country partnership's losses as a deduction. Moreover, in February 1989, the Town and Country partnership filed delinquent partnership returns and amended corporate returns for the tax years 1983-1987. The delinquent partnership returns included the items previously reported on the original corporate returns for those years. The amended corporate returns reported no corporate activity. The Does, LaMures, and Lankfords also filed amended individual returns in which they sought to deduct their pro rata share of the Town and Country partnership's losses.
 
 
 14
 The Commissioner did not accept the amended and delinquent returns' characterization of Town and Country as a partnership. In March 1990 and March 1991, the Commissioner issued notices of deficiency to the Does, LaMures, and Lankfords, again determining that the taxpayers had failed to establish that they had a sufficient basis in the stock and debt of the Town and Country corporation to allow them to deduct their pro rata share of all of the corporation's losses.[2]
 
 
 15
 The Does, LaMures, and Lankfords then filed the instant actions in the Tax Court seeking a redetermination of their deficiencies. They contended that, because the bar, restaurant, bowling alley, and liquor license had not been formally transferred from the Town and Country partnership to the Town and Country corporation when the corporation was formed in 1983, they did not realize gain. Additionally, they maintained, the fact that the assets had not been transferred from the partnership to the corporation allowed them to treat Town and Country as a partnership and thereby deduct their pro rata share of the business's losses on their individual returns. Finally, the Does, LaMures and Lankfords argued to the Tax Court that, even if assets were in fact transferred to the Town and Country corporation, they each had a sufficient basis in the stock and debt of the business to allow the challenged deductions. In support of this argument, the taxpayers maintained that Town and Country's $1.7 million liability should actually be viewed as a loan from them to the business and that they (rather than the business itself) had obtained the loan from First City National Bank. Thus, they concluded, their obligation on the $1.7 million note gave them a sufficient basis in the debt of Town and Country to allow them to deduct their pro rata share of all of the business's losses for the tax years in question.
 
 
 16
 In response, the Commissioner initially sought dismissal of the taxpayers' claims on jurisdictional grounds, arguing that adjudication of the claims would require the Tax Court to determine items that, under the SSRA, 26 U.S.C. §§ 6241-45, could only be addressed in a corporate-level proceeding. Rec. vol. I, docs. 25-26, vol. II, doc. 27. The Does, LaMures, and Lankfords agreed with the Commissioner's jurisdictional argument. Rec. vol. II, doc. 30. However, the Commissioner subsequently withdrew the motion to dismiss, explaining that several recent decisions had established that the Tax Court had jurisdiction over the instant actions against the individual taxpayers. Rec vol. IV, doc. 58 (citing Dial USA, Inc. v. Commissioner, 95 T.C. 1 (1990) and Roberts v. Commissioner, 94 T.C. 853 (1990)).
 
 
 17
 The Tax Court conducted a trial in March 1992. The Does, LaMures, and Lankfords presented several witnesses who testified that there had been no actual transfer of property from the Town and Country partnership to the Town and Country corporation. In particular, the attorney who assisted the taxpayers in the 1983 incorporation testified that "it was my understanding that the real estate was not going to go into the corporation" and that none of the bowling alley equipment was transferred to the corporation. Rec. vol. VI at 24 (trial transcript for March 17, 1992). Additionally, she identified a draft of a sales contract transferring assets from the partnership to the corporation but explained that the contract was never finalized. Id. at 38. Dr. Lankford testified that the liquor license was the only asset transferred and that the corporation never assumed the $1.7 million note or the mortgage on the partnership real estate. Id. at 77-78, 87-91. The President of the First City National Bank of Roswell agreed that the corporation did not assume the note or mortgage. Id. at 175-176. (trial transcript for March 18, 1992). Finally, an expert witness's report introduced at the trial concluded that from November 9, 1982 through September 13, 1989, "record title [in the subject real estate] ... vested in Town & Country Sports Enterprises, a New Mexico partnership." Rec. vol. VIII, Exhibit JT 143-DY at 2.
 
 
 18
 At the Tax Court trial, the parties also presented testimony concerning the circumstances surrounding the $1.7 million loan. Town and Country's accountant said that he told the Does, LaMures, and Lankfords that "they should get the loan, that the corporate name should never appear on the loan--it would always be considered a stockholder's debt--and that if that bank ever renewed the loan, to make sure that the corporation did not appear on that note; that it was a stockholder's loan and not a corporate debt." Rec. vol. VI at 112 (trial transcript for March 17, 1992 ). However, on cross-examination, the accountant acknowledged that on the Town and Country corporation's original 1983 return, he treated the $1.7 million liability as a note and mortgage payable by the corporation rather than as a loan from shareholders. See id. at 129-30.
 
 
 19
 The Does, LaMures, and Lankfords also offered evidence concerning the payments that they made to Town and Country. Dr. Lankford explained:
 
 
 20
 If the investment was short of cash, we would get a call from ... Dr. LaMure or a lady that worked for them....
 
 
 21
 And if there was a shortage, where we needed to contribute cash, she would contact each one of us, thereby--where we would all stay equal in our investment. And we would write a check to Town & Country Sports Enterprises. Then we had a trail, as to where we had each made the same amount contribution, or loan, ... and we were told by our accountant that that is what we could do; that it would be treated as a shareholders' loan,....
 
 
 22
 Id. at 79-80.
 
 
 23
 In a November 1993 decision, the Tax Court rejected the arguments advanced by the Does, LaMures, and Lankfords. See Doe v. Commissioner, 66 T.C.M. (CCH) 1376 (1993). The court concluded that it had jurisdiction over the deficiency proceedings against the individual taxpayers because the deficiencies were attributable to the taxpayers' lack of a sufficient basis in the Town and Country corporation's stock and debt. The court noted that an individual taxpayer's basis in his or her stock is not a "subchapter S item" that must be determined in a corporate level proceeding under the SSRA. See id. at 1381. As to Town and Country's assets, the court concluded that there had been a transfer from partnership to corporation, that the corporation had received property subject to the $1.7 million debt, and that the taxpayers realized gain from the transfer of this property under 26 U.S.C. § 357. See id. at 1382-83. Finally, the Tax Court found that the taxpayers had failed to establish that they had a sufficient basis in the $1.7 million debt. See id. at 1383-84.[3]
 
 II. DISCUSSION
 A. Jurisdiction
 
 24
 The Does, LaMures, and Lankfords first argue that the Tax Court lacked jurisdiction to assess the deficiencies for all the tax years at issue. They maintain that the Commissioner failed to follow the required procedures for conducting an audit of the Town and Country corporation pursuant to the SSRA, 26 U.S.C. §§ 6241-45, and the Tax Treatment of Partnership Items Act of 1982 ("TTPIA"), 26 U.S.C. §§ 6221-31, which is Title IV of the Tax Equity and Fiscal Responsibility Act of 1982 ("TEFRA"), Pub.L. No. 97-248, §§ 401-407, 96 Stat. 324, 648-71 (codified as amended in scattered sections of 26 U.S.C.). According to the taxpayers, the deficiencies assessed against them are attributable to "subchapter S items," items that can only be assessed in a proceeding against the subchapter S corporation itself and not in these proceedings against the individual taxpayers. Because the Commissioner did not comply with one of the requirements of a corporate level audit--the issuance of final notice of subchapter S administrative adjustment (FSAA) regarding the subchapter S items at issue--the taxpayers argue that Commissioner was not authorized to assess the deficiencies against them.
 
 
 25
 Analysis of this argument requires examination of both TEFRA[4] and the SSRA Additionally, we must examine each of the deficiencies assessed against the taxpayers to determine if any of them involved matters required to be determined in a corporate level audit.
 
 1. TEFRA and the SSRA
 
 26
 In 1983, Town and Country elected to be taxed as a small business corporation under subchapter S of the Internal Revenue Code's provisions regarding normal income taxes. Generally, a Subchapter S corporation does not pay taxes as an entity. See 26 U.S.C. § 1363(a); Beard v. United States, 992 F.2d 1516, 1519 (11th Cir.1993). See generally 11 Jacob Mertens Jr., The Law of Federal Income Taxation § 41B.01, at 2-3 (revised by Bruce Lemons et al.1995).[5] Instead, the subchapter S corporation files an informational return in which it reports certain items (e.g., aggregate income, gain, loss, deduction, credit, and the identity of its shareholders). These items are then passed through on a pro rata basis to the corporation's shareholders, who must then include them on their individual returns. See 11 Mertens, supra, § 41B.01, at 3. Thus, "[t]he [subchapter] S corporation is ... a Code created-hybrid combining traits of both corporations and partnerships." Beard, 992 F.2d at 1518. For many non-tax purposes, a subchapter S corporation resembles other corporations, particularly in providing shareholders with limited liability for corporate obligations. See id. However, in other respects, subchapter S corporations resemble partnerships. Like partnership income, most of the income of subchapter S corporations is taxed through individuals rather than through the entity. See id.
 
 
 27
 Taxation of partnerships and subchapter S corporations through individual partners and shareholders has often resulted in duplicative litigation and inconsistent application of the Internal Revenue Code. 4 Arthur Willis et al., Partnership Taxation § 201.02, at 201-2 (5th ed.1996). Prior to 1982, the Internal Revenue Service could only make adjustments to a partnership's taxable income by adjusting the return of each individual partner, and adjustments for each partner were not binding on the other partners. As a result, "each partner separately could take the same issue through the entire process" and "[i]t was possible for the same issue to be litigated as many times as there were partners, ... and for that issue to be resolved differently with respect to different partners in the same partnership." 4 Willis, supra, § 201.02, at 201-2; see also Randell v. United States, 64 F.3d 101, 103 (2d Cir.1995), cert. denied, 117 S.Ct. 65 (1996); Walthall v. United States, 911 F.Supp. 1275, 1283 (D.Alaska 1995).
 
 
 28
 In response to this problem, Congress passed the Tax Treatment of Partnership Items Act of 1982, 26 U.S.C. §§ 6221-31, as Title IV of the Tax Equity and Fiscal Responsibility Act of 1982 ("TEFRA"), Pub.L. No. 97-248, §§ 401-07, 96 Stat. 324, 648-71 (codified as amended in scattered sections of 26 U.S.C.). Section IV of TEFRA establishes a single, unified procedure for determining the tax treatment of "partnership items" (i.e. those items that the partnership is required to report each tax year). See 26 U.S.C. § 6231(a)(3).
 
 
 29
 Under Section IV of TEFRA, when the Internal Revenue Service seeks to adjust a partnership item, it must notify the partners of its intent to do so, and the partners then have the opportunity to contest the IRS's proposed adjustment of the item. See 26 U.S.C. § 6226. However, before assessing against the individual partners a deficiency attributable to a partnership item, the IRS must issue a final partnership administrative adjustment (FPAA) reflecting its decision. See 26 U.S.C. §§ 6223, 6225. The partners are then allowed to contest the FPAA in the Tax Court, the Court of Claims, or the appropriate federal district court. See 26 U.S.C. § 6226(a); Randell, 64 F.2d at 104. All partners with an interest in the outcome are allowed to participate, "thereby meeting TEFRA's objective of ensuring that all partners may, if they choose, litigate a dispute with the IRS in a single proceeding." Randell, 64 F.3d at 104; see also 4 Willis, supra, §§ 206.01-.05. After the adjustments to partnership items are finally resolved, the IRS may assess the individual partners their share of the adjusted partnership items. See 26 U.S.C. §§ 6225, 6230(a); Randell, 64 F.3d at 104.
 
 
 30
 Section IV of TEFRA also imposes certain responsibilities on individual partners. Unless he or she notifies the IRS of an intent to depart from the partnership return, each individual partner must report his or her share of partnership items in a manner consistent with the manner in which the item is treated on the partnership return. See 26 U.S.C. § 6222. "If the partner does so, in most cases the Service may make no adjustments to such items on the partner's return without first either auditing the partnership pursuant to the unified procedures or converting the partnership items on the partner's return to nonpartnership items."[6] 4 Willis, supra, § 201.04, at 201-5 to -6 (citations omitted).
 
 
 31
 Under the SSRA, the unified TEFRA audit procedures are applicable to subchapter S corporations. Dardanos Assocs./Third Dividend v. Commissioner, 88 F.3d 821, 823 (9th Cir.1996). Just as partnership items must be determined at the partnership level, subchapter S items must be determined at the corporate level. Compare 26 U.S.C. § 6221 with § 6241. The individual returns of shareholders of subchapter S corporations must treat subchapter S items in a manner consistent with the corporate return unless the shareholders provide notice of inconsistent treatment. 26 U.S.C. § 6242. Moreover, under the SSRA, the TEFRA procedures regarding the determination of partnership items through partnership level audits are applicable to subchapter S items, "except to the extent modified or made inapplicable in regulations." 26 U.S.C. § 6244.
 
 2. Subchapter S items
 
 32
 The SSRA and its incorporated TEFRA provisions create important distinctions between subchapter S items and nonsubchapter S items. Whether a particular item is a subchapter S item determines what portions of the individual taxpayer's return must be consistent with the corporate return as well as what portions of the individual return may be examined and adjusted only though unified, corporate-level proceedings. See 4 Willis, supra, § 202.04, at 202-9 to -10 (discussing partnership items under TEFRA).
 
 
 33
 Section 6245 of the Internal Revenue Code defines a subchapter S item as "any item of an S corporation to the extent regulations prescribed by the Secretary provide that, for purposes of this subtitle, such item is more appropriately determined at the corporate level than at the shareholder level." 26 U.S.C. § 6245. Regulations promulgated by the Commissioner provide a more specific definition, defining a "subchapter S item" to include "[t]he S corporation aggregate and each shareholder's share of, and any factor necessary to determine ... [i]tems of income, gain, loss, deduction, or credit of the corporation ... [and c]orporate liabilities (including determinations of the amount of the liability, [and] whether the corporate liability is to a shareholder of the corporation...." 26 C.F.R. § 301.6245-1T(a)(1)(i) & (v).[7]
 
 
 34
 In applying the language of the SSRA and accompanying regulations to determine whether a particular deficiency is attributable to a subchapter S item, one must consider whether it affects the entire corporation or only certain individual shareholders. See Beard, 992 F.2d at 1519. One must also consider whether, if the deficiency is determined individually in separate proceedings as to each shareholder rather than in a unified procedure, there would be a risk of inconsistent audit results from partner to partner and duplicative litigation. See id.[8]
 
 3. The Deficiencies at Issue in the Case
 
 35
 In arguing the jurisdictional issue, the parties offer different characterizations of the deficiencies in question. The taxpayers contend that all of the deficiencies are attributable to subchapter S items. They maintain that each deficiency is based on the Commissioner's determination as to the proper aggregate amount of the Town and Country corporation's assets, liabilities, gains, and losses as well as on whether, during the tax years in question, Town and Country was a subchapter S corporation or a partnership. In response, the Commissioner maintains that the deficiencies are based on the determination of the individual taxpayers' adjusted basis in the Town and Country corporation's stock and debt. Because a taxpayer's adjusted basis in a subchapter S corporation is not a subchapter S item, see 26 C.F.R. § 301.6245-1T(c)(3)(v), the Commissioner maintains, the Tax Court had jurisdiction to assess each component of the deficiencies for each of the tax years in question.
 
 
 36
 We note at the outset of our discussion of this issue that the Tax Court found that no notices of final subchapter S administrative adjustment were issued by the Commissioner for any of the tax years in question. See Rec. vol. V, doc. 91, at 17, Doe v. Commissioner, 66 T.C.M. (CCH) at 1381(finding that "[i]n the cases before us, respondent did not issue an FSAA to the corporation"). Moreover, the Commissioner has not challenged this factual finding in this appeal. Thus, pursuant to the SSRA, the Tax Court is prohibited from exercising jurisdiction as to any deficiencies that are attributable to subchapter S items. See 26 U.S.C. § 6241; University Heights at Hamilton Corp v. Commissioner, 97 T.C. 278, 280-81 (1991) ("The tax treatment of any subchapter S item is determined at the corporate level."); Maxwell v. Commissioner, 87 T.C. 783, 789 (1986) (concluding that the Tax Court lacked jurisdiction to redetermine "any portion of a deficiency attributable to a 'partnership item' " when no FPAA had been issued by the Commissioner).
 
 
 37
 We further note that the Does, LaMures, and Lankfords have challenged nine separate deficiency notices, issued in July 1988, March 1990, and March 1991. The majority of notices assess deficiencies for several different tax years, and each notice bases this assessment on several different underlying determinations. For example, the July 1988 deficiency notice to Dr. and Mrs. Doe assesses deficiencies for the 1983 and 1984 tax years. For the 1983 tax year, the notice sets forth two different grounds for the deficiency: (1) that the Does realized gain from the transfer of property from the Town and Country partnership to the Town and Country corporation; and (2) that the Does lacked sufficient basis in their stock in the subchapter S corporation to deduct their pro rata share of the corporation's losses. Several of the subsequent notices also contain multiple findings supporting particular deficiencies. As a result, in order to properly assess the taxpayers' argument that the Tax Court lacked jurisdiction, we must analyze the underlying determinations supporting the disputed deficiencies for each couple for each tax year.
 
 
 38
 a. Gain realized on incorporation (1983 tax year)
 
 
 39
 The July 1988 deficiency notices assessed against the Does, Lankfords, and LaMures all determined that the taxpayers recognized gain of $46,495.02 for the 1983 tax year. This determination is based on the Commissioner's findings that the sum of the liabilities transferred to the S corporation exceeded the sum of the assets transferred by $139,485.06 and that one third of this amount should be allotted as taxable gain to each couple. Accordingly, the notices state, the taxpayers income should be increased by that amount. In reaching this conclusion, the Commissioner applied 26 U.S.C. § 357(c). This section provides that if a taxpayer transfers property subject to liabilities in excess of his or her basis in the property, he or she realizes gain from the transfer. See Lessinger v. Commissioner, 872 F.2d 519, 525-28 (2d Cir.1989) (considering various constructions of 26 U.S.C. § 357(c)).
 
 
 40
 This portion of the 1983 deficiency against the taxpayers appears to be attributable to a subchapter S item. Under 26 C.F.R. § 301.6245-1T(a)(1)(v), subchapter S items include "[t]he S corporation aggregate and each shareholder's share of ... corporate liabilities." The Commissioner's determination that each couple realized the gain of
 
 
 41
 $46,495.02 is based on his calculation of corporate liabilities upon formation of the corporation in 1983.
 
 
 42
 Nevertheless, the fact that the 1983 deficiency notices refer to the aggregate liabilities of the Town and Country subchapter S corporation does not end the jurisdictional inquiry. Tax Court decisions and scholarly commentators have noted that, if the Commissioner's determination of a deficiency owed by an individual taxpayer is based upon information set forth in the original partnership or corporate return rather than on the Commissioner's own investigation, re-calculation, and re-determination of a partnership or subchapter S item, then the Tax Court retains jurisdiction to adjudicate the deficiency in an individual proceeding--even though the Commissioner has not complied with the applicable TEFRA or SSRA procedures. See Roberts v. Commissioner, 94 T.C. 853, 859-62 (1990) (noting that "[n]othing in the TEFRA partnership provisions indicates that [the Tax Court] cannot analyze documents and records at the partnership level in a deficiency proceeding" and that the Tax Court "lack[s] jurisdiction only to redetermine partnership items that the partnership was required to take into account at the partnership level"); 4 Willis, supra, § 209.05, at 209-12 ("[A]lthough adjustments to partnership items or nonpartnership items must be handled in different proceedings, determining the tax effects of one or the other types of adjustments takes into account the other items as reported or as previously adjusted.") (emphasis added). These decisions and commentators reason that, if the Commissioner merely accepts the partnership or corporate return as filed and proceeds to determine an individual deficiency by using the information contained in the entity's return, there is no "adjustment" to the entity's return and thus no need to follow the entity-level procedures.
 
 
 43
 In the instant case, the Commissioner invokes this principle, contending that in seeking to recover the alleged deficiencies against the Does, LaMures, and Lankfords, the IRS has not disputed the amounts reported in the Town and Country corporation's returns regarding the corporate "income, gain loss, deduction, credits, expenditures, or liabilities." Aple's Br. at 30. With regard to the determination that the Does, LaMures, and Lankford's realized gain in the 1983 tax year pursuant to 26 U.S.C. § 357(c) as a result of the transfer of assets from the Town and Country partnership to the Town and Country corporation, we agree with the Commissioner. The record indicates that the determination that each taxpayer couple realized $46, 495.02 in gain is based on the amount of assets and liabilities reported in the initial 1983 corporate return filed by the Town and Country corporation.
 
 
 44
 In particular, in the Tax Court proceedings, the Commissioner submitted the January 1988 report of IRS agent Alfonso L. Romero. See Rec. vol. VII, Exhibit 75 (offered at October 5, 1989 hearing). Agent Romero's report established that the $46,495.02 gain for each taxpayer couple was determined by taking the various categories of assets and liabilities reported on the the Town and Country corporation's 1983 return and allocating one third of the total amount to each couple. Compare Rec. vol. VII, Exhibit 75, at 2 with Rec vol VIII, Ex. 32-AF, at 4, 12 (initial 1983 corporate return for the Town and Country corporation).
 
 
 45
 Accordingly, because the Commissioner's determination of the gain realized by the taxpayers pursuant to 26 U.S.C. § 357(c) upon the alleged transfer of assets from the Town and Country partnership to the Town and Country corporation is based on the assets and liabilities reported on Town and Country's initial 1983 return, we conclude that the Tax Court had jurisdiction to adjudicate the deficiency attributable to this gain in these individual proceedings.
 
 
 46
 b. Adjusted Basis in Town and Country Stock and Debt (1983 Tax Year)
 
 
 47
 In several of the deficiency notices, the Commissioner determined that the deductions taken by the Does, LaMures, and Lankfords should be disallowed because the taxpayers had failed to establish that they had a sufficient basis in the Town and Country corporation's stock and debt to support the claimed deductions (their pro rata share of the corporation's losses). The taxpayers assert that these portions of the deficiencies involved several subchapter S items, including " '[w]hether Town and Country Sports Enterprises, Inc., is a corporation' " and " 'whether Town and Country Sports Enterprises, Inc., was indebted to its shareholders in the amount of $1,700,000 so as to increase the shareholders['] basis in the corporation by such amount.' " Aplt's Br. at 16 (quoting Commissioner's Motion to Dismiss, Rec. vol. I, doc. 25, at 5; doc. 26, at 4; vol. II, doc. 27, at 4). The Commissioner responds that 26 C.F.R. § 301.6245-1T expressly provides that a taxpayer's basis in the stock of a subchapter S corporation is not a subchapter S item. See 26 C.F.R. § 301.6245-1T(c)(3)(v) ("To the extent that a determination of an item relating to a distribution can be made from these and similar determinations that the corporation is required to make, that item is a subchapter S item. To the extent that the determination requires other information, however, that item is not a subchapter S item. Such other information would include the determination of a shareholder's basis in the shareholder's stock or in the indebtedness of the S corporation to the shareholder."). As a result, the Commissioner concludes, the Tax Court retained jurisdiction to assess the deficiencies resulting from the determination of the taxpayers' basis in the Town and Country corporation's stock and debt.
 
 
 48
 In order to address this part of the jurisdictional issue, we must consider the Internal Revenue Code's treatment of shareholders' basis in the stock and debt of subchapter S corporations. Generally, "[t]he amount of losses and deductions a shareholder can take is limited to the adjusted basis of the shareholder's stock and debt in the S corporation." 11 Mertens, supra, § 41B.128, at 175-76 (discussing 26 U.S.C. § 1366(d)).
 
 
 49
 A shareholder's initial basis in stock is the price paid for stock purchased from a third party or, if no third party is involved, the amount that the shareholder contributes to the corporation for issuance of the shares. See id. § 41B.125, at 172. "Where property is contributed to the corporation for stock, the basis is equal to the basis of the property transferred to the corporation." Id.
 
 
 50
 As to corporate debt, a shareholder's initial basis is generally the amount that the shareholder loans to the corporation. See id. However, a shareholder's basis in the corporation must include an actual economic outlay; the mere promise to advance money to the corporation if certain events occur is not sufficient to increase a shareholder's basis in the corporate debt. See Uri v. Commissioner, 949 F.2d 371, 373-74 (10th Cir.1991) (rejecting theory that shareholder's personal loan guarantees should be part of shareholder's adjusted basis in subchapter S corporation stock); Goatcher v. United States, 944 F.2d 747, 751-52 (10th Cir.1991) (same).
 
 
 51
 A shareholder's basis in corporate stock and debt may therefore involve matters particular to the individual shareholder (e.g. the price paid for stock by the individual shareholder or the amount loaned by the individual shareholder to the corporation). On the other hand, matters pertaining to the corporation as a whole--subchapter S items--may also affect a shareholder's basis. See University Heights, 97 T.C. at 281 (noting that "corporate deductions and losses [and] ... loans between the shareholders and the corporation" are subchapter S items and that, even though the Commissioner's determination of these items affects the shareholders' basis, these items are "required to be determined at the corporate level proceeding"); see also Nigh v. Commissioner, 62 T.C.M. (CCH) 30, 31 (1991) ("[C]orporate liabilities, including a determination of the amount of liability and whether the liability is to a shareholder, are subchapter S items.").
 
 
 52
 Given the composite nature of a shareholder's basis in corporate stock and debt--sometimes determinable by examining matters particular to the individual shareholder, sometimes determinable by examining matters pertaining to the corporation as a whole, and sometimes determinable only by examining both individual and corporate matters--we must examine the deficiencies here at issue more closely, beginning with the 1983 tax year. As noted above, the deficiency notices sent to the Does, LaMures, and Lankfords all state that the taxpayers failed to establish that they had a sufficient basis in the Town and Country corporation's stock and debt to support the listed deductions. In the notices, the Commissioner found that the deductions were limited to $42,800.00 for the Does and $43,000.00 for the LaMures and Lankfords. The Commissioner has explained in these proceedings that these figures represent the total amounts that the Does, LaMures, and Lankfords actually contributed to the Town and Country corporation during 1983. The taxpayers agree that these figures represent their "cash contributions to capital or loans to the business" during that year. Aplts' Br. at 10.
 
 
 53
 In this instance, just as with the portion of the alleged deficiency for 1983 attributable to § 357(c) gain, the Commissioner's determination of the taxpayers' basis in Town and Country subchapter S corporation's stock and debt appears to be attributable to a subchapter S item. In particular, in limiting the taxpayer's basis to $42,800.00 (for the Does) and $43,000.00 (for the LaMures and Lankfords), the Commissioner rejected the taxpayer's contention in the Tax Court proceedings that the Town and Country corporation was indebted to its shareholders for the $1.7 million loan from First City National Bank. As we have noted, the definition of a subchapter S item includes "[c]orporate liabilities (including determinations of the amount of the liability, whether the corporate liability is to a shareholder of the corporation, and changes from the preceding year)". 26 C.F.R. § 301.6245-1T(a)(1)(v) (emphasis added). Thus, whether the Town and Country corporation was liable to the taxpayers in 1983 for the $1.7 million loan is a subchapter S item.[9]
 
 
 54
 Nevertheless, as we have noted, the TEFRA and SSRA prohibitions against determining partnership and subchapter S items in individual deficiency proceedings do not prevent the Commissioner from determining, in individual proceedings, those deficiencies attributable to entity-level items as reported on the entity's return. See Roberts, 94 T.C. at 862 ("[The Tax Court] lack[s] jurisdiction only to redetermine [in a individual proceeding] partnership items that the partnership was required to take into account at the partnership level.") (emphasis added); 4 Willis, supra, § 209.05, at 209-12 ( noting that "it is the adjustment of an item that is prohibited in an inappropriate proceeding, not the recognition of that item in the computation of the deficiency resulting from the proceeding."). For example, if a taxpayer claims deductions for a subchapter S corporation's losses on an individual return in an amount that exceeds the losses reported by the taxpayer on the corporate return, and if the Commissioner accepts the losses reported on the corporate return and asserts a deficiency against the individual taxpayer based on the difference between the losses on the individual and corporate returns, the Commissioner is not required to follow the entity-level procedures, and the Tax Court has jurisdiction to determine the deficiency in an individual proceeding.[10]
 
 
 55
 Accordingly, in the instant case, in order to decide whether the Tax Court had jurisdiction to determine the portion of the alleged deficiencies attributable to the taxpayers' insufficient basis in the Town and Country corporation's stock and debt, we must examine the taxpayers' original 1983 corporate return, focusing on the taxpayers' treatment of the $1.7 million loan. The 1983 return indicates that the taxpayers characterized the loan in a manner that would not add to the taxpayers' basis in the Town and Country corporation's stock and debt. In particular, the $1.7 million loan is treated as a note and mortgage payable on behalf of the corporation rather than as a loan from shareholders. See Rec. Ex. 32-AF, at 4, line 19. Indeed, Town and Country's accountant acknowledged in his testimony before the Tax Court that the liability was not treated as a loan from shareholders on the initial 1983 corporate return. See Rec. vol. VI at 129-30 (trial transcript for March 17, 1992).
 
 
 56
 Accordingly, because the dispute involves the Commissioner's acceptance of the taxpayers' own characterization of the $1.7 million loan on the initial 1983 return, we conclude that the Tax Court had jurisdiction over the portion of the 1983 deficiencies attributable to the taxpayers' allegedly insufficient basis in the Town and Country corporation's stock and debt.
 
 
 57
 c. The 1984 Tax year
 
 
 58
 For the 1984 tax year, the Commissioner assessed a deficiency against Dr. and Mrs. Doe only. The Commissioner's notice explains that the deficiency is based on disallowing deductions for rental loss and a recalculation of the contribution deduction. In their appellate brief, the taxpayers have not argued that either of these matters involved subchapter S items. Accordingly, we affirm the Tax Court's finding that it had jurisdiction over the 1984 tax year.
 
 
 59
 d. Adjusted Basis in Town and Country Stock (1986 and 1987 tax years)
 
 
 60
 The Commissioner also found deficiencies in the individual tax returns of the Does, LaMures, and Lankfords for the tax years 1986 and 1987. For each of these tax years, the Commissioner again determined that the taxpayers did not have sufficient basis in the Town and Country corporation's stock and debt to allow the deduction of each taxpayer's pro rata share of the corporation's losses.
 
 
 61
 For these tax years, the Town and Country corporation's description of its corporate liabilities on its corporate tax forms requires a different result than the one we have reached for 1983. In the 1986 and 1987 tax returns, the Town and Country corporation reports "loans from shareholders" totaling $2,003,993.00 and $1,995,855.00 at the end of each tax year. See Rec. Ex. 35-AI, at 4, line 18; Ex. 36-AJ, at 4, line 18. Notwithstanding the listing of these loans on the corporate return, the Commissioner determined that the taxpayers had an insufficient basis to allow the deduction of any corporate losses for these years.
 
 
 62
 Although loans from a shareholder to a corporation generally increase the shareholder's basis in the corporate debt in the amount of the loan, see 11 Mertens, supra, § 41B.125, at 172, the loans from shareholders reported by the Town and Country corporation on its 1986 and 1987 returns apparently had no effect on the Commissioner's calculation of the taxpayers' basis. By discounting the corporation's reporting of loans loans from shareholders in the 1986 and 1987 corporate returns, the Commissioner recharacterized a corporate liability reported by the Town and Country corporation, thereby determining a subchapter S item. Because such a determination may only be undertaken in a entity level proceeding and because the proceedings that we are reviewing were not conducted at the entity level, we conclude that the Tax Court lacked jurisdiction to assess that portion of the 1986 and 1987 deficiencies involving the disallowance of the taxpayers' deduction for corporate losses on the grounds that they had an insufficient basis in the stock and debt of the Town and Country corporation.
 
 
 63
 e. Pro Rata Share of Losses and Adjusted Basis (1988 Tax Year)
 
 
 64
 For the 1988 tax year, the Commissioner assessed deficiencies against the Does and the Lankfords on the grounds that the taxpayers lacked sufficient basis in the Town and Country corporation's stock and debt. For that tax year, the Commissioner rejected the taxpayers' contention that the Town and Country corporation conducted no business and that the bar, bowling alley and restaurant were actually owned and managed by the Town and Country partnership. As a result, the Commissioner concluded that each taxpayer couple's distributive share of losses from the Town and Country corporation was $45,208.00 rather than $ 0.00, as the taxpayers reported on their returns. The Commissioner further determined that the taxpayers had failed to establish that their basis in the Town and Country corporation's stock and debt for that year was more than $0.00.
 
 
 65
 For this tax year as well, the Commissioner's explanation of the deficiencies is based on determinations inconsistent with the Town and Country corporation's return. The Town and Country corporation's return for 1988 describes an S corporation that had no gains and losses and that owned a single asset, the liquor license. In assessing the deficiencies for the year 1988, the Commissioner concluded that the Town and Country corporation continued to operate the bar, bowling alley, and restaurant and sustained certain losses. Again, the record before us indicates that the Commissioner determined "[t]he S corporation aggregate and each shareholder's share of ... [i]tems of income, gain, loss, deduction, or credit of the corporation" and "[c]orporate liabilities," see 26 C.F.R. § 301.6245-1T (a)(1)(i) & (v), subchapter S items that cannot be determined at the individual level. The Commissioner's determination that the taxpayers had no basis in Town and Country stock and debt for the 1988 tax year resulted directly from the finding that it was the subchapter S corporation rather than the partnership that operated the business. Thus, the Commissioner's determination of the taxpayers' basis for the 1988 tax year is also attributable to a subchapter S item--i.e., whether the business was operated by a subchapter S corporation or a partnership.
 
 
 66
 We therefore conclude that the Tax Court lacked jurisdiction to assess deficiencies against the Does and the Lankfords for the 1988 tax year insofar as those deficiencies involved the Commissioner's determination of the taxpayers' pro rata share of corporate losses and their lack of sufficient basis in corporate stock and debt.
 
 4. Summary of jurisdictional rulings
 
 67
 In summary, we conclude that the Tax Court had jurisdiction to assess the following deficiencies: (1) that part of the deficiencies for the 1983 tax year assessed against the Does, LaMures, and Lankfords because they realized gain from the transfer of property in 1983 from the Town and Country partnership to the Town and Country corporation; (2) that part of the deficiencies for the 1983 tax year assessed against the Does, LaMures, and Lankfords because they lacked sufficient basis in the stock and debt of the Town and Country corporation; (3) the deficiencies assessed against the Does for the 1984 tax year.
 
 
 68
 However, we further conclude that the Tax Court lacked jurisdiction to assess the following deficiencies: (1) that part of the deficiencies for the 1986 and 1987 tax years assessed against the Does, LaMures, and Lankfords because they lacked sufficient basis in the stock and debt of the Town and Country corporation; (2) that part of the deficiencies assessed against the Does and Lankfords because they lacked sufficient basis in the Town and Country corporation for the 1988 tax year.[11]
 
 B. The Merits
 
 69
 Our resolution of the jurisdictional issues leaves us with only a few matters to consider on the merits: (1) whether the Tax Court properly assessed against all of the taxpayers that portion of the deficiencies attributable to the alleged realization of gain under 26 U.S.C. § 357(c) from the transfer of assets from the Town and Country partnership to the Town and Country corporation; (2) whether the Tax Court properly assessed against all of the taxpayers that portion of the deficiency for the 1983 tax year resulting from the taxpayers' insufficient basis in the Town and Country corporation's stock and debt; and (3) whether the 1984 deficiencies were properly assessed against the Does.[12]
 
 1. Section 357(c)
 
 70
 gain--1983
 
 
 71
 As the Tax Court observed, 26 U.S.C. § 357(c) requires the recognition of gain in certain circumstances when a taxpayer transfers property to a corporation in exchange for stock. Under § 357(c), a taxpayer realizes gain from such a transfer "if the sum of the amount of the liabilities assumed, plus the amount of the liabilities to which the property is subject, exceeds the total of the adjusted basis of the property transferred." 26 U.S.C. § 357(c). Whether there is a transfer of property that triggers § 357(c) is a question of state law. See Helvering v. Stuart, 317 U.S. 154, 161 (1942) (concluding that the effect of a trust instrument was a matter of state law and that "[w]hen Congress fixes a tax on the possibility of the revesting of property or the distribution of income, the 'necessary implication' ... is that the possibility is to be determined by the state law"); Lessinger, 872 F.2d at 523 (concluding that whether a corporation assumed liabilities such that § 357(c) applies is a question of state law); Estate of Bright v. United States, 658 F.2d 999, 1001 (5th Cir.1981) (concluding in an estate tax dispute that "state law ... determines precisely what property is transferred"); United States v. Wodtke, 627 F.Supp. 1034, 1043 (N.D.Iowa 1985) (applying state law to determine whether taxpayers transferred property), aff'd, 871 F.2d 1092 (8th Cir.1988). We review the Tax Court's factual findings as to whether property was transferred for clear error. See ABC Rentals of San Antonio, Inc. v. Commissioner, 97 F.3d 392, 395 (10th Cir.1996).
 
 
 72
 As a general rule, under New Mexico law, conveyances of real property must be in writing. Mercury Gas & Oil Corp. v. Rincon Oil & Gas Corp., 445 P.2d 958, 960 (N.M.1968); Board of Educ. v. James Hamilton Constr. Co., 891 P.2d 556, 562 (N.M.Ct.App.1994); Gonzales v. Gonzales, 867 P.2d 1220. 1227 (N.M.Ct.App.1993). Additionally, real property belonging to a partnership may only be conveyed in the name of the partnership. See N.M.Stat. Ann. § 54-1-8(C); see also Daniels Ins., Inc v. Daon Corp., 742 P.2d 540, 543 (N.M.Ct.App.1987) (discussing transfer of partnership property). Written contracts are also required for sales of goods over $500. Elephant Butte Resort Marina, Inc. v. Wooldridge, 694 P.2d 1351, 1354 (N.M.1985) (citing N.M.Stat. Ann. § 55-2-201(1)).
 
 
 73
 In the instant case, in concluding that the Town and Country partnership transferred property to the Town and Country corporation in 1983, both the Commissioner and the Tax Court relied on representations in the taxpayers' corporate tax returns and financial statements and on the fact that the taxpayers repeatedly indicated from 1983 to 1988 that Town and Country was a subchapter S corporation. However, neither the Tax Court nor the Commissioner have cited any authority indicating that such representations are sufficient to establish a transfer of property under New Mexico law. The New Mexico authorities that we have identified indicate that the transfer of property requires something more than a statement on a tax return, financial statement or a pleading in a lawsuit: generally, it is the execution of a contract, deed, or related written instrument that transfers property. See, e.g., Vickers v. North Am. Land Developments, Inc., 607 P.2d 603, 605-06 (N.M.1980) (concluding that contract for exchange of real estate was enforceable); see generally Haimes v. Noble, 202 A.2d 917, 918 (D.C.1964) ("Mere incorporation with intent to convert the partnership business to a corporate operation does not ipso facto transfer partnership property to the corporation.").
 
 
 74
 Upon review of the record, we conclude that the Tax Court clearly erred in finding that property was transferred from the Town and Country partnership to the Town and Country subchapter S corporation in 1983. As noted, the taxpayers introduced an expert witness report, unrebutted by the Commissioner, concluding that from November 1982 until September 1989, the Town and Country partnership held record title to the subject real estate. An attorney for the taxpayers testified that no assets were actually transferred from the partnership to the corporation and identified a proposed contract regarding the transfer that was never executed. The attorney's testimony was also not rebutted by the Commissioner. Finally, the President of the First National Bank of Roswell stated that the Town and Country subchapter S corporation never assumed the $ 1.7 million note, and nothing in his testimony indicated that the Town and Country corporation received the assets in question. In light of this evidence, the tax returns, financial statements, and representations regarding the subchapter S corporation invoked by the Commissioner and the Tax Court are insufficient to establish the transfer of property from the partnership to the corporation in 1983.[13]
 
 
 75
 We therefore conclude that the Tax Court erred in determining that the Does, LaMures, and Lankfords each realized $46,495.02 in gain from the alleged transfer of property from the partnership to the corporation.[14]
 
 2. 1983--Insufficient Basis
 
 76
 As to the finding that they lacked sufficient basis to deduct their pro rata share of the Town and Country corporation's losses for the 1983 tax year, the taxpayers maintain that the Tax Court erred in concluding that Town and Country operated as a subchapter S corporation rather than as a partnership. They contend that the Tax Court should have accepted the characterization of Town and Country set forth in their amended return for 1983--that, in spite of the filing of articles of incorporation, the issuance of stock, the filing of corporate tax returns, and all the other factors set forth in the Tax Court's opinion, Town and Country was actually a partnership that sustained losses that each partner is entitled to deduct. See 11 Mertens, supra, § 41B.03, at 15 (noting that partners, in contrast to a subchapter S corporation's shareholders, may deduct their pro rata share of the partnership's losses regardless of the amounts that they actually invest in the partnership).
 
 
 77
 Upon review of the record, we find no error in the Tax Court's conclusion that Town and Country operated as a subchapter S corporation for the 1983 tax year. As the Tax Court noted, Town and Country constituted a corporation under New Mexico law. See N.M. Stat. Ann. § 53-12-4 (Michie 1978 and Supp.1993) (providing that the certificate of incorporation shall be conclusive evidence that all conditions precedent have been complied with and that the entity has been incorporated). Under the federal tax laws, a corporation exists if formed for a business purpose or if it carries on business after incorporation. See Moline Properties, Inc. v. Commissioner, 319 U.S. 436, 438-39 (1943); Skarda v. Commissioner, 250 F.2d 429, 433-35 (10th Cir.1957). Generally, "if a taxpayer chooses to conduct business through a corporation, he will not subsequently be permitted to deny the existence of a corporation if it suits him for tax purposes." Betson v. Commissioner, 802 F.2d 365, 368 (9th Cir.1986). In this case, there is ample evidence that the Does, LaMures, and Lankfords established the Town and Country corporation for a business purpose and conducted business after incorporation. Accordingly, the Tax Court properly concluded that Town and Country was taxable as a subchapter S corporation in 1983.
 
 
 78
 As to the amount of the taxpayers' basis in the Town and Country corporation's stock and debt for the 1983 tax year, we note that the Commissioner determined the actual amounts that they contributed to the corporation during that year. In their opening brief, the taxpayers do not challenge the Commissioner's calculation of the total amount of these contributions. See Aplts' Br. at 28. Accordingly, we affirm the the Tax Court's decision upholding the Commissioner's assessment of that portion of the deficiencies for the 1983 tax year assessed against the Does, the LaMures, and the Lankfords on the grounds that they lacked sufficient basis in the Town and Country corporation's stock and debt to deduct more than $42,800.00 (the Does) and $43,000.00 (the LaMures and the Lankfords).[15]
 
 3. 1984
 
 79
 For the 1984 tax year, the Does have presented no arguments in this appeal as to why the deficiency was improper. Accordingly, we affirm the Commissioner's assessment of the deficiencies against the Does for the 1984 tax year.
 
 C. CONCLUSION
 
 80
 As set forth below, the decision of the Tax Court is affirmed in part and reversed and remanded in part with instructions to the Tax Court to dismiss the claims regarding certain of the alleged deficiencies for lack of jurisdiction.
 
 
 81
 As to the deficiencies for the 1983 tax year that are attributable to the § 357(c) gain realized by the Does, the Lamures, and the Lankfords upon the alleged transfer of property from the Town and Country partnership to the Town and Country subchapter S corporation, we conclude that the Tax Court had jurisdiction. This conclusion is based on the fact that, in assessing these deficiencies, the Commissioner and the Tax Court relied on the description of corporate assets and liabilities reported on the Town and Country corporation's initial return for 1983. On the merits, however, we reverse the Tax Court's decision because the record does not establish that the property was transferred to the corporation under state law.
 
 
 82
 As to the deficiencies for the 1983 tax year that are attributable to the allegedly insufficient basis of the Does, the Lamures, and the Lankfords in the Town and Country corporation's stock and debt, we also conclude that the Tax Court had jurisdiction. Because the Commissioner determined these deficiencies by accepting the characterization of the $1.7 million loan from the First City National Bank of Roswell in the Town and Country corporation's initial 1983 return, the Commissioner was not required to follow the TEFRA and SSRA entity-level audit procedures and was authorized to determine these deficiencies in these individual proceedings. On the merits, we affirm the Tax Court's decision. The Commissioner's and the Tax Court's determinations of these deficiencies are properly based upon the amounts actually contributed to the Town and Country corporation during 1983.
 
 
 83
 As to 1984, we affirm the Commissioner's and the Tax Court's determination of the deficiencies against the Does. As to this tax year, the Does have not presented any arguments in this appeal as to why the deficiencies are improper.
 
 
 84
 As to 1986 and 1987, we conclude that the Tax Court lacked jurisdiction to determine the deficiencies attributable to the Does', LaMures', and Lankfords' allegedly insufficient basis in the Town and Country corporation's stock and debt. The Commissioner's determination of these deficiencies is based on a recharaterization of the loans from shareholders reported by the Town and Country corporation on its initial 1986 and 1987 returns. Because the characterization of corporate liabilities-such as loans from shareholders--is a subchapter S item, the loans fron shareholders item reported on the 1986 and 1987 returns could only be adjusted in an entity-level proceeding pursuant to TEFRA and the SSRA and not in these individual proceedings. Accordingly, as to these deficiencies, we reverse the Tax Court's decision and remand the matter to the Tax Court with instructions to dismiss for lack of jurisdiction.
 
 
 85
 Finally, as to 1988, we also conclude that the Tax Court lacked jurisdiction to assess the deficiencies attributable to the Does', the LaMures', and the Lankfords' allegedly insuficient basis in the Town and Country corporation's stock and debt. The Commissioner's and the Tax Court's determination of these deficiencies resulted directly from their conclusion that Town and Country operated as a corporation rather than as a partnership in 1988. Whether an entity is a subchapter S corporation is a "subchapter S item." Because the initial partnership and corporate returns filed by Town and Country for this tax year described the business as a partnership, the Commissioner improperly redetermined a "subchapter S item" in these individual proceedings. Accordingly, as to these deficiencies, we reverse the Tax Court's decision and remand to the Tax Court with instructions to dismiss for lack of jurisdiction.
 
 
 86
 In summary, as set forth above, the decision of the Tax Court is affirmed in part, reversed in part, and remanded in part, with instructions to dismiss the claims involving certain parts of the deficiencies for lack of jurisdiction.
 
 APPENDIX A: SUMMARY OF DEFICIENCY NOTICES
 
 87
 The following is a summary of the deficiency notices issued for the 1983, 1984, 1986, 1987 and 1988 tax years against the Does, Lamures, and Lankfords:
 
 
 88
 1. July 7, 1988 deficiency notice issued to Frederick and Barbara Doe (Ex. 69-BP):
 
 A. 1983 tax year:
 
 89
 1. disallows $ 3,000.00 deduction for rental loss, stating that the deduction is not allowable because it has not been established that any amount was for ordinary and necessary business expenses, or was expended for the purpose designated.
 
 
 90
 2. determines that the Does recognized gain of $46,495.02 when they incorporated the partnership into a subchapter S corporation because the sum of the liabilities transferred to the S corporation exceeded the assets transferred by $46, 495.02; concludes that the Does' income should be increased by that amount.
 
 
 91
 3. reduces the deduction for the Town and Country corporation's losses from $ 119,122.00 to $42,800.00 because it has not been established that their basis in the stock and debt exceeds $42,800.00.
 
 
 92
 4. determines that due to the increase in the amount of their adjusted gross income, the Does are entitled to a contribution deduction of $71,905.00 rather than the $46,910.00 as shown on their tax return.
 
 
 93
 5. imposes penalties for negligence or intentional disregard of rules and regulations and substantial understatement of tax.
 
 B. 1984 tax year:
 
 94
 1. disallows $2,100.00 rental loss deduction for the same reason as 1983.
 
 
 95
 2. increases taxable income by $ 8,166.00 as a result of redetermination of the contribution deduction.
 
 
 96
 3. imposes penalties for negligence or intentional disregard of rules and regulations and for substantial understatement of tax.
 
 
 97
 2. July 7, 1988 deficiency notice issued to David and Margaret LaMure (Ex. 70-BQ):
 
 A. 1983 tax year:
 
 98
 1. determines that the LaMures recognized gain of $46,495.02 upon incorporation of the subchapter S corporation--because the sum of liabilities transferred exceeded the sum of assets transferred by that amount; concludes that the LaMures' taxable income should be increased by that amount
 
 
 99
 2. disallows the $ 119,122.00 deduction for the Town and Country corporation's losses because it was not established that the Lamures' basis in Town and Country's stock and debt exceeded $43,000.00.
 
 
 100
 3. imposes penalties for negligence or intentional disregard of rules and regulations and substantial understatement.
 
 
 101
 3. July 7, 1988 deficiency notice issued to James and Virginia Lankford (Ex. 68-BO):
 
 A. 1983 tax year:
 
 102
 1. determines that the Lankfords recognized gain of $46,495.02 upon incorporation of the partnership because the sum of liabilities transferred exceeded assets transferred by $46,495.02; determines that the Lankfords' taxable income should be increased by that amount.
 
 
 103
 2. disallows the $119,122.00 deduction because the Lankfords have not established that their basis in Town and Country stock and debt exceeded $43,000.00.
 
 
 104
 3. determines that the Lankfords, due to the increase in the amount of adjusted gross income, are entitled to a contribution deduction of $170.00 rather than $ 0.00.
 
 
 105
 4. imposes penalties for negligence or intentional disregard of rules and regulations.
 
 
 106
 4. March 1, 1990 deficiency notice to Frederick and Barbara Doe (Ex. 107-CV):
 
 A. 1986 tax year:
 
 107
 1. determines that the Does' distributive share of loss from the Town and Country corporation is $103,126.00 rather than $93,363.00 as shown on the 1986 tax return "since adjustments have been made at the corporate level."
 
 
 108
 2. determines that the $93,363.00 deduction for the Town and Country corporation's losses, as well as "the additional loss deduction in the amount of $9,763.00 resulting from adjustments at the corporate level" are not allowable because it had not been established that the Does had an adequate basis in the stock and debt of the Town and Country subchapter S corporation.
 
 
 109
 3. increases the Does' contribution deduction from $38,895.00 to $48,897.00; decreases their taxable income accordingly.
 
 
 110
 4. increases sales tax deduction from $1,231.00 to $1,511.00, and decreases taxable income accordingly.
 
 
 111
 5. imposes penalties for negligence or intentional disregard of rules and regulations and for substantial understatement.
 
 
 112
 5. March 1, 1990 deficiency notice to David and Margaret Lamure (Ex. 108-CW):
 
 A. 1986 tax year:
 
 113
 1. determines that their distributive share of the loss from the Town and Country corporation is $103,126.00 rather than $93,363.00 "since adjustments have been made at the corporate level."
 
 
 114
 2. determines that the $93,363.00 loss is not allowable because the Lankfords did not establish that they had sufficient basis in the Town and Country corporation's stock and debt.
 
 
 115
 3. imposes penalties for negligence or intentional disregard of rules and regulations and for substantial understatement of tax.
 
 
 116
 6. March 1, 1990 deficiency notice to James and Virginia Lankford (Ex. 109-CX)
 
 A. 1986 tax year:
 
 117
 1. determines that the distributive share of loss from the Town and Country corporation is $103,126.00 rather than $93,363.00, "since adjustments have been made at the corporate level."
 
 
 118
 2. disallows the $93,363.00 deduction because the Lankfords have failed to establish an adequate basis in the stock and debt of the Town and Country S corporation.
 
 
 119
 3. increases the deduction for general sales tax from $287.00 to $1,241.00.
 
 
 120
 4. decreases the investment credit from $1,518.00 to $589.00.
 
 
 121
 5. imposes penalties for negligence or intentional disregard of the rules and regulations and for substantial understatement of tax.
 
 
 122
 7. March 11, 1991 deficiency notice to Frederick and Barbara Doe (Ex. 110-CX):
 
 A. 1987 tax year:
 
 123
 1. determines that the Does' distributive share of loss from the Town and Country corporation is $20,800.00 rather than $32,097.00 "since adjustments have been made at the corporate level."
 
 
 124
 2. determines that the Does' allowable deduction for the Town and Country corporation's losses is $0.00 because the Does have failed to establish that they had a basis in the stock and debt that was greater than $0.00.
 
 
 125
 3. disallows $25,846.00 deduction for contribution carryovers "since it has not been established that you were entitled to contribution carryovers from prior years."
 
 
 126
 4. determines that the Does realized interest income of $371.00, which the Does failed to report on their tax return; increases income by that amount.
 
 
 127
 5. determines that the Does are not entitled to any general business credit "since it has not been established that any investment credit remained for carryforward to the 1987 tax year"; increases tax liability by $1,583.00.
 
 
 128
 6. assesses penalty for negligence or intentional disregard of rules and regulations and for substantial understatement of tax.
 
 B. 1988 tax year:
 
 129
 1. determines that the Does' distributive share of losses from the Town and Country partnership is $ 0.00 rather than $45,208.00.
 
 
 130
 2. determines that the Does' distributive share of losses from the Town and Country corporation is $45,208.00 rather than $0.00.
 
 
 131
 3. disallows the deduction of $45,208.00 for the Town and Country corporation losses because the Does failed to establish a basis in stock and debt greater than $0.00.
 
 
 132
 4. disallows $ 1,035.00 deduction for contribution carryovers "since it has not been established that [the Does] were entitled to contribution carryovers from prior years."
 
 
 133
 5. determines that the Does' distributive share of net income from a rental real estate activity of the Town and Country partnership is $ 22,190.00, which the Does failed to report; increases taxable income accordingly.
 
 
 134
 6. As an alternative position, states that if it is determined that rental real estate activity from the Town and Country partnership should have been reported by the Town and Country corporation, the Does' distributive share of income from real estate activity will be reported as originating from the corporation.
 
 
 135
 7. assesses penalty for negligence or intentional disregard of rules and regulations and for substantial underpayment of tax.
 
 
 136
 8. March 11, 1991 deficiency notice to David and Margaret LaMure (Ex. 112-DA):
 
 A. 1987 tax year
 
 137
 1. determines that the LaMures distributive share of losses from the Town and Country corporation is $20,800.00 rather than $32,097.00 "since adjustments were made at the corporate level. "
 
 
 138
 2. determines that the deduction for the LaMures' distributive share of losses for the Town and Country corporation is $ 0.00 because the LaMures have failed to establish that their basis in stock and debt is greater than $0.00.
 
 
 139
 3. determines that the LaMures realized interest income of $2,862.00 that they failed to report; increases their taxable income accordingly.
 
 
 140
 4. determines that the LaMures are not entitled to any general business credits because "it has not been established that any investment credit remained for carryforward to the 1987 tax year "; increases tax liability by $6,780.00.
 
 
 141
 5. As an alternative position, states that if it is determined that rental real estate activity from the Town and Country partnership should have been reported by the Town and Country corporation, the LaMures' distributive share of income from real estate activity will be reported as originating from the corporation.
 
 
 142
 6. assesses penalty for negligence or intentional disregard of rules and regulations and for substantial understatement of tax.
 
 
 143
 9. March 11, 1991 deficiency notice issued to James and Virginia Lankford (Ex. 111-CZ):
 
 A. 1987 tax year:
 
 144
 1. determines that the Lankfords' distributive share of loss from the Town and Country corporation is $20,799.00 rather than $32,096.00 "since adjustments have been made at the corporate level. "
 
 
 145
 2. determines that the Lankfords' allowable deduction for the Town and Country corporation's losses is $0.00 because they failed to establish a basis in the stock and debt greater than $0.00.
 
 
 146
 3. assesses penalty for negligence and intentional disregard of rules and regulations and for substantial understatement of tax.
 
 
 147
 4. decreases miscellaneous itemized deductions from $3,483.00 to $2,841.00.
 
 
 148
 5. determines that the Lankfords are not entitled to any general business credit; increases tax liability by $1,391.00.
 
 C. 1988 tax year:
 
 149
 1. determines that Lankfords' distributive share of losses from the Town and Country corporation is $45,221.00 rather than $0.00.
 
 
 150
 2. determines that the Lankfords' distributive share of losses from the Town and Country partnership is $0.00 rather than $45,221.00.
 
 
 151
 3. disallows deduction for the Town and Country corporation's losses because the Lankfords have failed to establish basis in stock and debt greater than $0.00.
 
 
 152
 4. decreases miscellaneous itemized deductions from $4,705.00 to $ 3,801.00.
 
 
 153
 5. determines that Lankfords are not entitled to any general business credit; increases tax liability by $3,250.00.
 
 
 154
 6. as an alternative position, states that if it is determined that rental real estate activity from the Town and Country partnership should have been reported by the Town and Country corporation, the Lankfords' distributive share of income from real estate activity will be reported as originating from the corporation.
 
 
 155
 7. assesses penalty for negligence of intentional disregard of rules and regulations and for substantial understatement of tax.
 
 
 156
 APPENDIX B: DEFINITION OF "SUBCHAPTER S ITEM" UNDER 26 C.F.R. § 301.6245-1T
 
 
 157
 26 C.F.R. § 301.6245-1T provides an extensive definition of "subchapter S items":
 
 
 158
 (a) In general. For purposes of subtitle F of the Internal Revenue Code of 1986, the following items which are required to be taken into account for the taxable year of an S corporation under subtitle A of the Code are more appropriately determined at the corporate level than at the shareholder level and, therefore, are subchapter S items:
 
 
 159
 (1) The S corporation aggregate and each shareholder's share of any factor necessary to determine, each of the following:
 
 
 160
 (i) Items of income, gain, loss, deduction, or credit of the corporation;
 
 
 161
 (ii) Expenditures by the corporation not deductible in computing its taxable income (for example, charitable contributions);
 
 
 162
 (iii) Items of income of the corporation that may be tax preference items under section 57(a) for any shareholder;
 
 
 163
 (iv) Items of income of the corporation that are exempt from tax;
 
 
 164
 (v) Corporate liabilities (including determinations of the amount of the liability, whether the corporate liability is to a shareholder of the corporation, and changes from the preceding year); and
 
 
 165
 (vi) Other amounts determinable at the corporate level with respect to corporate assets, investments, transactions, and operations necessary to enable the S corporation or the shareholders to determine--
 
 
 166
 (A) The general business credit provided by section 38;
 
 
 167
 (B) Recapture under section 47 of the credit provided by section 38;
 
 
 168
 (C) Amounts at risk in any activity to which section 465 applies;
 
 
 169
 (D) The depletion allowance under section 613A with respect to oil and gas wells;
 
 
 170
 (E) Amortization of reforestation expenses under section 194;
 
 
 171
 (F) The credit provided by section 34 for certain uses of gasoline and special fuels; and
 
 
 172
 (G) The taxes imposed at the corporate level, such as the taxes imposed under section 56, 1374, or 1375;
 
 
 173
 (2) Any factor necessary to determine whether the entity is an S corporation under section 1361, such as the number, eligibility, and consent of shareholders and the classes of stock;
 
 
 174
 (3) Any factor necessary to determine whether the entity has properly elected to be an S corporation under section 1362 for the taxable year;
 
 
 175
 (4) Any factor necessary to determine whether and when the S corporation election of the entity has been revoked or terminated under section 1362 for the taxable year (for example, the existence and amount of subchapter C earnings and profits and passive investment income); and
 
 
 176
 (5) Items relating to the following transactions, to the extent that a determination of such items can be made from determinations that the corporation is required to make with respect to an amount, the character of an amount, or the percentage of stock ownership of a shareholder in the corporation, for purposes of the corporation's books and records or for purposes of furnishing information to a shareholder:
 
 
 177
 (i) Contributions to the corporation; and
 
 
 178
 (ii) Distributions from the corporation.
 
 
 179
 (b) Factors that affect the determination of subchapter S items. The term "subchapter S item" includes the accounting practices and the legal and factual determinations that underlie the determination of the existence, amount, timing, and characterization of items of income, credit, gain, loss, deduction etc. Examples of these determinations are: The S corporation's method of accounting, taxable year, and inventory method; whether an election was made by the corporation; whether corporate property is a capital asset, section 1231 property, or inventory; whether an item is currently deductible or must be capitalized; whether corporate activities had been engaged in with the intent to make a profit for purposes of section 183; whether the corporation qualified for the credit for increasing research activities under section 41; and whether the corporation qualified for the credit for clinical testing expenses for a rare disease or condition under section 28.
 
 
 180
 (c) Illustrations--(1) In general. This paragraph (c) illustrates the provisions of paragraph (a)(5) of this section. The determinations illustrated in this paragraph (c) that the corporation is required to make are not exhaustive; there may be additional determinations that the corporation is required to make which relate to a determination listed in paragraph (a)(5) of this section. The critical element is that the corporation is required to make a determination with respect to a matter for the purposes stated; failure by the corporation to actually make a determination (for example, because it does not maintain proper books and records) does not prevent an item from being a subchapter S item.
 
 
 181
 (2) Contributions. For purposes of its books and records, or for purposes of furnishing information to a shareholder, the S corporation must determine:
 
 
 182
 (i) The character of the amount received by the corporation (for example, whether it is a contribution, loan, or repayment of a loan);
 
 
 183
 (ii) The amount of money received by the corporation; and
 
 
 184
 (iii) The basis to the corporation of contributed property (including necessary preliminary determinations, such as the shareholder's basis in the contributed property).
 
 
 185
 To the extent that a determination of an item relating to a contribution can be made from these and similar determinations that the corporation is required to make, that item is a subchapter S item. To the extent that the determination requires other information, however, that item is not a subchapter S item. Such other information would include those factors used in determining whether there is recapture under section 47 by the contributing shareholder of the general business credit because of the contribution of property in circumstances in which that determination is irrelevant to the corporation.
 
 
 186
 (3) Distributions. For purposes of its book and records, or for purposes of furnishing information to a shareholder, the S corporation must determine:
 
 
 187
 (i) The character of the amount transferred to a shareholder (for example, whether it is a dividend, compensation, loan, or repayment of a loan);
 
 
 188
 (ii) The amount of money distributed to a shareholder;
 
 
 189
 (iii) The fair market value of property distributed to a shareholder;
 
 
 190
 (iv) The adjusted basis to the corporation of distributed property; and
 
 
 191
 (v) The character of corporation property (for example, whether an item is inventory or a capital asset).
 
 
 192
 To the extent that a determination of an item relating to a distribution can be made from these and similar determinations that the corporation is required to make, that item is a subchapter S item. To the extent that the determination requires other information, however, that item is not a subchapter S item. Such other information would include the determination of a shareholder's basis in the shareholder's stock or in the indebtedness of the S corporation to the shareholder.
 
 
 193
 (d) Cross reference. For the definition of subchapter S item for purposes of the windfall profit tax, see § 51.6245-1T.
 
 
 194
 (e) Effective date. This section shall apply to taxable years beginning after December 31, 1982.
 
 
 
 [1]
 In the discussion below, we refer to the partnership established by Drs. Doe, Lamure, and Lankford in 1982 as "the Town and Country partnership." We refer to the subchapter S corporation established in 1983 as "the Town and Country corporation." When describing both entities collectively, we refer to "Town and Country."
 
 
 [2]
 The amounts of the various deficiencies assessed against the Does, LaMures, and Lankfords and the reasons given by the Commissioner in support of the deficiencies are set forth in more detail in Appendix A
 
 
 [3]
 The Tax Court did rule in favor of the Does, LaMures, and Lankfords on several issues. It concluded that they were not liable for additions to tax for a substantial understatement under 26 U.S.C. § 6661(a). See Doe, 66 T.C.M. at 1384. It also held that the taxpayers were not liable for additions to tax for negligence under 26 U.S.C. § 6653. See id. These rulings are not at issue in this appeal
 
 
 [4]
 Many courts and scholars refer to the Tax Treatment of Partnership Items Act (the "TTPIA") as "TEFRA", and we adopt that usage here
 
 
 [5]
 In several circumstances not applicable here, a subchapter S corporation may be directly liable for certain taxes--such as built-in gains and excess net passive income. See Third Dividend/Dardanos Assocs. v. Commissioner, 88 F.3d 821, 823 (9th Cir.1996)
 
 
 [6]
 Section IV of TEFRA provides that in certain circumstances partnership items may be converted into nonpartnership items. See 26 U.S.C. § 6231(b); see also 4 Willis, supra, § 202.06, at 201-24 to -27. For example, under 26 U.S.C. § 6231(b)(1)(B), a partnership item becomes a nonpartnership item if a partner files suit after the IRS refuses to allow an administrative adjustment request. The parties do not argue that such a conversion occurred here
 
 
 [7]
 Appendix B sets forth the complete definition of a "subchapter S item" under 26 C.F.R. § 301.6245-1T
 
 
 [8]
 Analyzing analogous sections of TEFRA, one commentator notes that an expansive interpretation of what constitutes a partnership item is appropriate to accomplish the goal of unified audit procedures. See 4 Willis, supra, § 202-04, at 202-9 to 10
 
 
 [9]
 Because the characterization of the $ 1.7 million loan affects the entire corporation, it is the kind of item that could engender inconsistent results or duplicative litigation if determined in separate individual deficiency proceedings for each shareholder. In the instant case, these risks are minimized by the Tax Court's decision to consolidate these individual proceedings. However, the Commissioner has not argued that the consolidation of individual shareholder deficiency proceedings abrogates the requirement that subchapter S items must be determined in corporate-level proceedings
 
 
 [10]
 The Tax Court's jurisdiction to determine such a deficiency in an individual proceeding is supported by 26 U.S.C § 6222(c)(2). That section of TEFRA provides that if an individual taxpayer fails to notify the Commissioner that his individual return is inconsistent with the partnership return, the TEFRA partnership audit procedures "shall not apply to any part of a deficiency attributable to any computational adjustment required to make the treatment of the items by such partner consistent with the treatment of the items on the partnership return.")
 
 
 [11]
 We disagree with the argument advanced by the Commissioner that two decisions, Dial USA, Inc. v. Commissioner, 95 T.C. 1 (1990) and Roberts v. Commissioner, 94 T.C. 853 (1990), changed the definition of a subchapter S item in such a way as to confer jurisdiction on the Tax Court for all the tax years at issue. See Rec. vol. IV, docs. 57-59 (Commissioner's Motions to Withdraw Motions to Dismiss). Dial relies on the definition of a subchapter S item set forth in 26 C.F.R. § 301.6245-1T to conclude that "a shareholder's basis is not an item that can properly be decided in the subchapter S corporation proceeding." 95 T.C. at 5-6. In reaching this conclusion, the Dial court acknowledged that even though an individual shareholder's basis is not itself a subchapter S item, subchapter S items may affect a shareholder's basis. Id. at 7. (For example, the determination of whether a corporate liability is a loan from shareholders or an obligation to an outside party is a subchapter S item; however, that determination may affect the individual shareholders' basis in the corporation. See 26 C.F.R. § 301.6245-1T(a)(1)(v); University Heights at Hamilton Corp. v. Commissioner, 97 T.C. 278, 281 (1991)). In Roberts, the court concluded that certain "affected items"--items affected by partnership items--could be determined in an individual partner's deficiency proceeding if the Commissioner accepted the partnership return as filed. Roberts, 94 T.C. at 859-862. Under Dial and Roberts, the items at issue in the case at bar--the assets and liabilities of a subchapter S corporation and the determination of whether a corporation's obligation is to its shareholders or an outside party--are still subchapter S items
 
 
 [12]
 We note that for all of the tax years at issue, the Commissioner also assessed certain deficiencies resulting from miscellaneous items that are not discussed by the parties in this appeal. As the parties have not challenged these determinations in this appeal, we do not consider them here
 
 
 [13]
 This conclusion is supported by decisions that have disregarded matters reported in tax returns and in financial statements in determining the effect of various transactions under the Internal Revenue Code. See DeFelice v. Commissioner, 386 F.2d 704, 710 (10th Cir.1967) (affirming Tax Court's discounting of taxpayer's description of assets in financial statement); see also Theophilos v. Commissioner, 85 F.3d 440, 448-49 (9th Cir.1996) (concluding that taxpayer's failure to report transaction in his return did not establish lack of contractual right)
 
 
 [14]
 In light of this conclusion, we do not consider the taxpayers' alternative argument that they did not realize gain from the transfer of property because some of the liabilities transferred gave rise to deductions and were therefore excluded from the calculation of gain pursuant to 26 U.S.C. § 357(c)(3). See Aplts' Br. at 24-27
 
 
 [15]
 In their reply brief, the taxpayers do advance several arguments as to why they had sufficient basis in the Town and Country corporation's stock and debt in 1983 to allow them to deduct their pro rata share of the corporation's losses. See Aplts' Reply Br. at 5-8. We need not consider arguments raised for the first time on appeal in a reply brief, and we do not do so here. See Zimmerman v. Sloss Equip., Inc., 72 F.3d 822, 830 (10th Cir.1995). However, we note that the additional arguments advanced by the taxpayers in their reply brief regarding basis in 1983 accept the Tax Court's finding that property was transferred from the partnership to the corporation in that year, a finding that we have concluded is not supported by the record